[No. 18042. Department Two. — March 7, 1893.]

MATTHEW HEALY, APPELLANT, v. B. C. WOODRUFF ET AL., RESPONDENTS.

WATER RIGHTS — APPROPRIATION — RIPARIAN RIGHTS. — An appropriator of water on the public lands does not, by becoming a riparian owner, lose his right to acquire more of the water by a subsequent appropriation, or enlargement of his ditch, but he may take all the water of the stream if he is the first or prior appropriator, and there is no other riparian owner at the time of the appropriation or enlargement of the ditch, and those who subsequently became riparian owners acquire no rights as against such prior appropriator.

APPEAL from a judgment of the Superior Court of Lassen County.

The facts are stated in the opinion of the court.

*Spencer & Raker*, for Appellant.

*A. L. Shinn*, and *R. L. Shinn*, for Respondents.

MCFARLAND, J. — This is an action to quiet plaintiff's title to certain waters of a stream called Cedar Creek, and to a ditch leading therefrom, and for an injunction,

etc. The court rendered judgment for plaintiff against the defendants Harrison Smith and Edward Bonyman, as prayed for in the complaint; but as against the defendants James and John A. Smith and B. C. Woodruff, the judgment quieted plaintiff's title to only one hundred and eighty inches of water, measured under a four-inch pressure. Plaintiff appealed from the judgment, and contends that the court's conclusions of law were erroneous, and that, upon the findings of fact, his title should have been quieted to three hundred and sixty inches.

The court finds (in brief) these facts: In April, 1873, plaintiff's grantor, Frank Thomas, entered upon said Cedar Creek, and constructed the ditch described in the complaint. He completed it before the 4th of November, 1873, and diverted one hundred and eighty inches of water, and used it for irrigating certain lands described in the findings, for watering stock, and for domestic purposes, to the amount of one hundred and eighty inches, that being then the capacity of the ditch. In the winter of 1873–74, the ditch became so enlarged, "through the action of water running to the head thereof and into the same," that it was afterwards capable of carrying three hundred and sixty inches. "Ever since said ditch was so enlarged, and up to the time of the commencement of this action, plaintiff and his grantors did divert and use from said Cedar Creek the waters of said creek to the full capacity of said ditch as so enlarged, whenever sufficient water came down to the same, and that said waters have been used during all said time for irrigating the lands described in finding 5, as well as other lands of plaintiff described in the complaint herein, and for watering stock, and for general household purposes." Plaintiff's lands require for irrigating at least three hundred and sixty inches of water. Plaintiff acquired from said Thomas the said ditch and water rights and certain lands, in September, 1874, and has ever since been the owner of the same. Many years afterwards, the various defendants began to

assert rights to the waters of said creek as riparian own-
ers, or as appropriators, and to divert the same from
plaintiff's ditch; but none of such rights had any origin
within five years after the said enlargement of the said
ditch. Most of them originated ten or fifteen years
afterwards.

Between the time when the ditch was first constructed,
with the capacity of one hundred and eighty inches,
and the winter of 1873–74, when it was enlarged to
three hundred and sixty inches, the said Frank Thomas,
plaintiff's grantor, acquired title from the United States
to a piece of land, through a small portion of which the
said Cedar Creek runs. Before that the entire stream
ran through public lands, and it continued afterwards
to run through public lands for many years, throughout
its course, except where it run through said land ac-
quired by said Thomas in 1873, as aforesaid.

Upon these findings of fact, the court below made the
conclusion of law that plaintiff should have his title
quieted to only 180 inches. The record does not show,
upon its face, upon what theory this conclusion was
reached; but we discover the theory from the brief of
respondents. It appeared that the court held that be-
cause the plaintiff's grantor acquired the title to some
land on the stream, and thus became a riparian owner,
he could not afterwards acquire any more water by ap-
propriation, and that therefore his enlargement of the
ditch in the winter of 1873–74 did not give him any
right to an increased flow of water in his ditch, as against
any one who, years afterwards, might assert riparian
rights on the stream above the ditch. But this position
is clearly untenable. The fact that plaintiff or his
grantor was a riparian owner does not warrant the con-
clusion that he could not be an appropriator, — there is,
as is said in a play, " No consonancy in the sequel."
The notion seems to be, that becoming a riparian owner
estops one, in some sort of a way, from being an appro-
priator of water, although there be no one in existence
in whose favor the estoppel can be invoked. When the

ditch was enlarged, there was no person having any rights on the stream except plaintiff's grantor himself, and therefore the enlargement of the ditch encroached upon nobody's vested or prior rights.    Respondent argues that if appellant's position be correct, the first riparian owner could monopolize all the waters of the stream.    But he admits that an appropriator who is not a riparian owner can take all the water of a stream on the public lands, if he be the prior or first appropriator. And it would certainly be strange if the first-comer to a stream, who acquired title to some land upon it, has less rights in the water of the stream than one who owns no land there at all.    At the time of the enlargement of the ditch, there was no riparian owner on the stream except plaintiff's grantor.    If some other person had been the riparian owner, instead of plaintiff's grantor, the latter, with the consent of such riparian owner, or by adverse user, could have diverted the waters of the stream, and held them against all subsequent comers; and certainly his own consent to the appropriation was equal, at least, to the consent of another person who might have occupied his position.    Counsel for respondents seems to think that because plaintiff's grantor, as a riparian owner, could have prevented subsequent appropriators from diverting the water above his land and away from it, therefore he could not divert the water himself; but that is a confusion of the distinction between *meum* and *tuum.*    Counsel complain that this view gives great advantage to the first possessor and appropriator of the water of a stream.    This is no doubt true, but it is the advantage which the law gives, and which necessarily follows prior occupancy and appropriation.

We think, therefore, that the third and fourth conclusion of law made by the court below, to the effect that plaintiff has the first right, by prior appropriation, to 180 inches of the waters of said Cedar Creek, are erroneous; and that the court should have found as a conclusion of law that plaintiff has such right to 360 inches of said water.    And as the facts found show what the

judgment should have been, there is no necessity for another trial.

The judgment as to respondents and defendants B. C. Woodruff, John A. Smith, and James M. Smith is reversed, with directions to the superior court to amend its conclusions of law as indicated in this opinion, and to enter judgment in due form, quieting plaintiff's title as against said respondents to said ditch and to said waters of Cedar Creek, to the extent and in the amount of 360 inches of water measured under a four-inch pressure, and enjoining said respondents from diverting water from said ditch, or interfering therewith, while there is not more such than 360 inches running in said ditch, with costs, etc., as in the former judgment.

DE HAVEN, J., and FITZGERALD, J., concurred.

Hearing in Bank denied.