[L. A. No. 493. In Bank.—October 24, 1900.]

EDWIN SENIOR et al., Appellants, v. J. C. ANDERSON et al., Respondents.

WATER RIGHTS — PRIOR AND SUBSEQUENT APPROPRIATIONS— EXTENT OF NECESSARY USE — FINDING AGAINST EVIDENCE.—The evidence reviewed and held insufficient to support a finding that the whole of a stream to the extent of the capacity of the ditch of prior appropriators, while there is sufficient to fill it, and all that may flow in it in the irrigating season, is necessary for agricultural and domestic uses on their land, as against subsequent appropriators of the stream. [McFarland, J., dissenting.]

ID.—RIPARIAN RIGHTS—CERTIFICATE OF PURCHASE—PRIOR APPROPRIATION NOT AIDED.—Riparian rights can only entitle the owner to a reasonable use of the water of the stream upon riparian lands; and if a prior appropriation of the stream made for the use of the same lands exceeded in quantity what was required for beneficial uses upon the lands, riparian rights subsequently acquired thereupon by a certificate of purchase by the prior appropriator cannot aid the rights of such appropriator, as against a subsequent appropriator of the waters of the stream.

ID.—RIGHTS OF LOWER SUBSEQUENT APPROPRIATOR.—A lower subsequent appropriator is entitled to have all of the stream, except so much as has been antecedently acquired by beneficial use un-

der a prior appropriation, flow down to his land, for the uses named in his notice of appropriation.

ID.—ADVERSE USE BY PRIOR APPROPRIATOR.—The diversion of water through the ditch of a prior appropriator not necessary for a useful purpose cannot confer a right as against a subsequent appropriator, and after the subsequent appropriation, the application of more water to a beneficial use by the prior appropriator must mark the beginning of adverse use.

ID.—PROPOSED COMPROMISE—AUTHORITY OF PRESIDENT OF WATER COMPANY—EXECUTION OF COMPROMISE BY PLAINTIFFS—RIGHTS OF DEFENDANTS.—A proposition of consolidation and compromise of the water rights of the plaintiffs and of a corporation under which the defendants claim, made by its president without authority or sanction of the corporation, is not binding upon and does not estop the defendants, though acted upon and executed on the part of the plaintiffs. But if it were shown that the president was authorized to make the proposition which was so acted upon, or if the adjustment was ratified by the water company, the defendants might be compelled to perform the agreement.

COSTS—PREVIOUS TRIALS.—The party ultimately prevailing in an action is entitled to recover from the defeated party the costs of previous trials, in so far as they are legitimate and properly taxed.

ID.—MOTION TO TAX COSTS—NOTICE—SPECIFICATION OF OBJECTIONS—AFFIDAVITS—EVIDENCE AT HEARING.—It is sufficient in the notice of a motion to have the costs taxed by the court, under section 1033 of the Code of Civil Procedure, to specify certain items of costs in the cost bill as objected to, and to state that they are not legally chargeable as costs, and were not necessary disbursements in the action. It is not necessary that any affidavits should accompany the notice, but upon the hearing of the motion any competent evidence, oral or written, may be presented to the court.

ID.—UNAUTHORIZED COSTS—REPORTER'S TRANSCRIPT—COPIES OF PAPERS WITHDRAWN.—Items of costs paid without consent of the parties or order of the court, for a transcript of the reporter's notes and for copies of excluded papers withdrawn, are improper, and should be rejected upon taxation of costs.

ID.—COPIES OF PAPERS FROM LAND OFFICE NOT USED—ABSENCE OF EXPLANATION.—An item of cost paid for copies of numerous papers from the commissioner of the general land office, which were not offered in evidence, and the need of which was not explained nor shown to have been reasonably apprehended, should be stricken out.

APPEAL from a judgment of the Superior Court of Ventura County and from orders denying a new trial and denying a motion to retax costs. B. T. Williams, Judge.

The facts are stated in the opinion of the court.

H. L. Poplin, for Appellants.

J. S. Chapman, and E. S. Hall, for Respondents.

THE COURT.—Action to quiet title to a water right. Findings and judgment were for the defendants, and plaintiffs appeal from the judgment and from an order denying a new trial, and also from an order after judgment relating to costs.

A former judgment in this case in favor of the defendants was reversed upon plaintiffs' appeal, and a new trial granted. The second trial was had upon the same pleadings, and the issues are therefore unchanged.

For a statement of the case and the issues involved see the opinion of this court upon the former appeal, reported under the same title, in 115 Cal. 496.

The principal question of fact was then, and is now, the extent or quantity of the Hines' appropriation. Upon the former appeal it was held that the quantity appropriated by Hines was so much of the water of the stream as was reasonably necessary for the use of the Hines tract of land at the time the action was commenced. The quantity of land then irrigated was not materially different from that now irrigated. The quantity of water then diverted through the Hines ditch and that now diverted, so far as the evidence shows, is the same, namely, seventy-seven and seventy-eight one-hundredths inches, measured under a four-inch pressure. Upon the former appeal, this court concluded, from the evidence, that more water was diverted upon the Hines ranch than was required or used for any useful purpose thereon. The evidence upon the second trial shows that there are now irrigated upon the Hines tract about forty acres in fruit trees, no alfalfa, and ten or twelve acres of wild or uncultivated grass land used for pasturage, and, as before, one hundred and eighty to two hundred acres of nonriparian lands, outside of the Hines tract, upon which citrus fruits are cultivated.

Upon the second trial, there was evidence tending to show that there were other portions of the Hines tract that were capable of irrigation from the Hines ditch, but under the decision upon the former appeal that fact does not affect Senior's appropriation, which is to be determined by the quantity of water

reasonably required for the irrigation of the lands then irri-
gated upon the Hines tract, omitting, perhaps, the pasture land,
which Mr. W. L. Hall testified he did not now irrigate because
he did not have sufficient water, and had not for two years.
Several witnesses testified that the whole of the water was nec-
essary for use upon the Hines tract, and the court so found,
though it was further found that: "While the amount of sev-
enty-seven and seventy-eight one-hundredths inches, measured
under a four-inch pressure, would be more than was neces-
sary for the irrigation of the Hines tract, if the same flowed
continuously, yet no such quantity of water continues to flow
during any considerable portion of the irrigating season, and it
is necessary to make use of all the water that would flow in said
conduits of the defendants, while the same continues to flow, to
keep the lands in such condition as that the quantity of water
usually flowing in the stream later in the season would suffice
for the proper irrigation thereof, and the said amount flowing
in said stream during the irrigation season is, in many years,
insufficient in quantity for the proper supply of said lands."

Many witnesses were examined and testified to the effect that
the flow of water in the stream greatly diminished during the
irrigating season, but no effort seems to have been made to as-
certain by measurement the average flow of the water in differ-
ent months of the season, nor the quantity in fact used upon the
Hines ranch, nor upon the outside lands, nor whether the water
was used upon the Hines land by continuous flow, or alternately,
by time division, with the outside lands. It does appear, how-
ever, that the water system of the outside lands had a capacity of
thirty inches, and said lands were entitled to five-eighths of the
water, and the Hines place to three-eighths; and, in the absence
of specific evidence to the contrary, we must assume that the
water was in fact used substantially in those proportions. Of
course, it is immaterial to the plaintiffs where the water legally
appropriated by Hines was used, but the quantity of land irri-
gated from that source furnishes evidence tending to show
whether the quantity of water diverted from the stream through
the Hines ditch was more than was reasonably necessary for
beneficial uses upon the Hines land, since that was the measure
of the extent of his appropriation. Plaintiffs also introduced

several witnesses who had experience in the irrigation of fruit lands in that vicinity who testified to the quantity of land that could, in their judgment, be irrigated with one inch of water flowing perpetually, and these ranged from two acres of fruit land to seven or eight acres to each inch of water, and among the witnesses who so testified were four of the defendants. This wide variance as to the quantity per acre is based partly upon the character of the soil, and partly upon the age of the trees, and the manner of using the water. This evidence tends strongly to sustain the contention of the plaintiff, and supported as it is by the fact that five-eighths of the water is used upon one hundred and eighty acres of other lands, while the remainder sustains the trees growing upon the Hines ranch without injury, so far as disclosed by the evidence, and by the further fact that for two years or more what was supposed to be about one-tenth of the water diverted by both ditches was used upon plaintiffs' land, would appear to greatly preponderate over the general expression of an opinion that the entire flow during the irrigating season was not more than sufficient for the proper irrigation of the Hines land upon which the water had been at any time used.

There was some testimony, however, of a different character, and furnishing a different basis of calculation.

W. L. Hall, one of the defendants, and also one of the owners of the Hines ranch and having the charge of it for himself and his co-owner, was asked by his counsel the following question: "When you say it would require forty inches to the acre to irrigate it during the year, do you mean by that that it would take forty inches of say twelve thousand five hundred or thirteen thousand gallons, or whatever an inch of water is, forty times that amount per acre during the year? Is that what you mean when you say forty inches to the acre? A. Forty times thirteen thousand gallons, that is what I mean; and, dividing it up during the season, one-fifth of that would be eight inches to the irrigation; and that amount placed on the ground is what I term forty inches during the season."

Assuming that the witness correctly states the number of gallons required to put one inch of water upon an acre of ground, the number of inches measured under a four-inch pressure re-

quired to put that quantity of water upon an acre of land is not difficult of computation. According to the "Statistician and Economist" for 1899-1900, page 549, one miner's inch (four-inch pressure) will discharge in twenty-four hours 2,260.8 cubic feet, or 16,956 gallons. Deducting thirty-eight per cent for the difference between the theoretical and the actual flow (6,443 gallons), we have 10,513 gallons actual flow in twenty-four hours, or, for ten days, 105,130 gallons while each irrigation of eight inches on defendants' basis would require eight times 13,000, or 104,000 gallons. If, therefore, we further assume that fifty acres are irrigated on the Hines ranch, fifty inches constant flow would put the required amount of water on each acre every ten days; or a constant flow of seventeen inches would put said required amount of water on said fifty acres every month.

Here is a mathematical demonstration based upon the testimony of defendant Hall, who, with his co-owner of the Hines ranch and of the water right, conveyed that water right to the corporation, and through it to his codefendants; and it may be added that this conclusion is supported more or less directly by the testimony of all the witnesses who base their testimony upon their experience and observation of the quantity of fruit land that may be irrigated per inch of water; and the fact that for seven or eight years before the second trial of this case from one hundred and eighty to two hundred acres of fruit land, outside of the Hines land, had been irrigated almost entirely from the Hines ditch closely approaches a demonstration that the capacity of the Hines ditch, and the water diverted thereby, was largely in excess of the requirements of the Hines ranch.

As to the quantity of water flowing in the stream during the irrigating season, Mr. Hall testified: "About sixty inches on an average flows down that creek to our point of diversion, I would suppose, in the first part of the year, and diminishes rapidly until along in August I have hardly ever found more than thirty inches; last year there was about twenty inches in October. The lowest stage of water I think was sixteen inches. In the first of July last year there was thirty-five or forty inches. That amount, I think, would not be any more than sufficient to irrigate the cultivated lands on the Hines place."

These quantities are estimated by the witness; but, assuming they are correct, and testing the quantity of water required to irrigate the lands that have been irrigated on the Hines place, including the ten or twelve acres of grass land, either by the testimony of the witnesses as to the quantity of water required per acre, or by the computation based upon the theory that eight inches in depth of water is required for each of five irrigations during the season (being equal to forty inches of rainfall), the findings of the court that the whole of the stream, to the extent of the capacity of the ditch, while there is sufficient water to fill it, and all that may thereafter flow during the irrigating season is necessary for agricultural and domestic uses on the Hines land, are not justified by the evidence.

It is contended by respondents that Senior acquired no rights by his notice and the actual diversion of the water in October, 1887; that riparian rights had before that attached to the lands of Mrs. Hines, she having proved up and obtained her final certificate of purchase. There is no merit in this contention. Her riparian rights could only entitle her to a reasonable use of the water upon her riparian lands, but having before she acquired title from the United States appropriated more water than was acquired for beneficial uses upon said land, she could acquire no right to any additional quantity under the law of riparian rights.

Respondents cite *Smith v. Hawkins*, 110 Cal. 122, and *Broder v. Natoma Water etc. Co.*, 101 U. S. 274, to the proposition that where an appropriation of water is made upon the public lands of the United States, when it is perfected, the act of Congress of 1866 operates as a grant of the right. Those cases especially related to the right of way for canals and ditches for the conveyance of water over public lands, and held that as against subsequent purchasers of these lands the act of Congress operated as a grant to the ditch owner, but neither of these cases hold that one can divert water from a stream and, without devoting the water within a reasonable time to a beneficial use, hold it as against an appropriation afterward lawfully made and perfected.

Again, it is contended by respondents that it is not shown by any satisfactory evidence that there was ever any water used on the Senior place except at times when there was a quantity in

the stream in excess of that diverted by the defendants, except the little that rises in the stream below defendants' dam and ditch, and that it does not appear that such right was ever interfered with. That Senior was entitled to have all of the stream (except so much as was legally appropriated by Hines) flow down to his land, cannot be questioned; and if Hines, or the defendants, diverted more of the stream than was legally appropriated, it was clearly an interference with plaintiffs' rights; and in the fourth finding it is stated, after finding the posting of the notice and the construction of the ditch by Senior, that he "did divert from the stream at divers times such water as might be flowing therein at the point of said diversion for use upon his land."

By his appropriation Senior was entitled to the quantity of water reasonably necessary for the uses named in his notice, provided that quantity would naturally flow in the stream at the point of his diversion, as against all above him on the same stream, subject to the single exception of rights antecedently acquired. (*Crandall v. Woods*, 8 Cal. 136.)

Respondents contend, however, that the use of water on the Hines place began ten or eleven years before Senior settled upon his land, that Senior settled there in 1886, that his notice of appropriation was posted November 3, 1887, nearly seven years before this suit was begun, and again urge that plaintiffs' right to any of the water actually diverted through the Hines ditch is barred by the statute of limitations. This point was disposed of on the former appeal, where it was said: "The diversion through the Hines ditch of water not necessary for a useful purpose, for any length of time, would not give a right as against the plaintiffs, and, therefore, the application of the water to a beneficial purpose upon other lands by the defendants, or their predecessors in interest, the Ojai Valley Water Company, must mark the beginning of the adverse use"; and that use is clearly shown to have begun within five years before this action was commenced.

That plaintiffs have a useful purpose to which they desire to apply the water is clear. Senior testified that about eighty acres of the one hundred and sixty patented to him is capable

of irrigation, and about twenty-five acres were in actual cultivation at the commencement of this suit.

In April, 1892, W. L. Hall, then president of the Ojai Valley Water Company, and one of the owners of the Hines place, wrote a letter to Mr. Senior in which was outlined a scheme for the consolidation of the water right of the plaintiffs with that of the corporation, by which plaintiffs were to have one-tenth of the whole of the water diverted by both ditches. A sufficiently full statement of the proposition and what was done thereunder appears in the opinion upon the former appeal (115 California) at pages 506, 507. This scheme was fully executed so far as the plaintiffs were concerned. Hall was permitted to unite the two ditches, and he also inserted a pipe in the flume through which was conveyed to the plaintiffs approximately one-tenth of the whole flow of the water, and that was continued for two years. Plaintiffs executed conveyances of the water right and of the rights of way, and offered to deliver them, and one or more of the conveyances required to be given to the plaintiffs were prepared by Hall. The corporation, however, never took formal action upon the proposition, which was made by Hall, personally, as an adjustment which he was willing to make and would advise the corporation to ratify; but he testified that he had conferred with the stockholders and members of the board, and they declined or refused to approve the scheme. No change was made, however, in the use of the water until after the conveyance was made by the corporation to the individual stockholders who constitute the San Antonio Water Company, and appellants contend, in substance, that the defendants having received a conveyance of the property and water right from the corporation while the waters were so united and used, the defendants are estopped to deny the validity of this adjustment of the controversy and of plaintiffs' right to said one-tenth of the united flow of both ditches in the manner proposed and executed by Hall. We do not think, however, that because the defendants bought the property and rights of the corporation, whether they be regarded as a voluntary unincorporated association, or as copartners, or as individuals, while Senior's pipe was still attached to defendants' flume, that they are bound by a transaction which was not obligatory upon their grantor. If it

were shown that Hall was authorized by the corporation to make such adjustment of the conflicting claims of the corporation and the plaintiffs, or that what he did had been subsequently ratified by the corporation or the defendants, there would be no difficulty in compelling a performance of the agreement which would have happily, and perhaps justly, ended this unfortunate controversy.

There is also an appeal from an order denying plaintiffs' motion to retax costs.

As to the liability of the party ultimately defeated for the costs of previous trials, so far as the same are legitimate and properly taxed, it may be said, for the guidance of the court upon a new trial being had, that the party defeated is liable. Upon this point see *Stoddard v. Treadwell,* 29 Cal. 281, and the cases there cited. In *Shreve v. Cheesman,* 69 Fed. Rep. 789, it was said that the Colorado statute which provides that "the prevailing party shall recover his costs to be taxed" authorizes him to recover all his costs in the action, including those of a prior mistrial, as well as those of the last trial. (Citing numerous cases from other states.)

The bill of exceptions, taken upon the hearing of the motion to retax the costs, contains the notice of said motion which sets out the various items objected to, amounting in all to $397.75, including $79.65, the costs of the former trial. Upon the hearing the court struck out certain items amounting to $30.10, and taxed the remainder at $395.65. The notice of appeal specifies the items as to which the appeal is taken.

The first item, costs of former trial, $79, has been disposed of.

The notice of motion to retax the costs was not accompanied by any affidavit specifying the grounds of the objection to the items mentioned therein, but it was stated that the items mentioned were not legally chargeable as costs against the plaintiffs, and that they were not necessary disbursements in the action; and that "the motion would be heard on the papers on file, and any other testimony that may be produced on the hearing of the motion."

Upon the hearing Mr. Poplin, plaintiffs' attorney, was sworn and offered to testify concerning certain items, and defendants objected that no affidavit in support of or specifying the facts

upon which the objections were based, accompanied the notice, and that the only evidence admissible under the notice was the papers in the case. The objection was taken under advisement, and the testimony admitted subject to said objections, to be determined upon the decision of the motion. The question does not appear to have been passed upon. The court denied the motion, and upon its own motion struck out certain items hereinbefore stated.

Section 1033 of the Code of Civil Procedure, which provides for motions to have the costs taxed by the court, does not specify what the notice must contain, nor upon what kind of evidence it shall be heard. The notice of the motion was certainly as specific as the affidavit to the cost bill, and was sufficient; and any evidence, oral or written, in its nature competent to prove or disprove a material fact in a court of justice we think is competent upon the hearing of such motion.

The following items stated in the notice of appeal from the order should have been rejected:

1. "Reporter, A. Pratt, for transcript, $223.20." As to this item, the uncontradicted evidence given by Mr. Poplin shows that counsel for defendants requested him to consent to an order to have the reporter write up his notes, each party to pay one-half of the cost of the same, and this request was refused, and the matter being presented to the court, the court declined to make such order unless plaintiffs would consent, and plaintiffs refused to give such consent, and that the notes were transcribed without their knowledge or consent. Under these facts the said item was not a proper charge in the cost bill, and should have been stricken out. Besides, the item was too indefinite, and did not show upon its face that it was a proper charge either as to subject or amount.

2. "A. R. Crawford, copying papers withdrawn, $19.25." These copies were not made by any consent or order of the plaintiffs or their attorney, or of the court. These papers were offered by defendants to be read in evidence, but were excluded under objection of plaintiffs. The ground of objection under which they were excluded does not appear. This item being objected to, and it not appearing upon its face to be a proper charge, the burden was upon the defendant to show facts sus-

taining it. (*Miller v. Highland Ditch Co.,* 91 Cal. 103.) Besides, it appears that the copies were of records of Ventura county, and under rule 23 of the superior court of that county the cost of copies of such records are not allowed as costs, unless they have been ordered by the court or judge.

3. "Paid commissioner of general land office for copies of papers, $14.95." This item was the cost of copies of all the papers on file in said office relative to the homestead entry of Alice Hines, "aggregating thirty-three pages, and seventeen instruments not introduced in evidence." No explanation is given tending to show that in any contingency, reasonably to be apprehended, they would be needed. This item should also have been stricken out.

The other items appear to have been for proper or necessary disbursements, and, in the absence of some evidence tending to show that they are false, excessive, or erroneous, should be allowed.

It is ordered that the judgment and the order denying defendants' motion for a new trial be reversed, and that the court below be directed to strike from the defendants' cost bill the three items above specified amounting to $257.40.

McFARLAND, J., dissenting.—I dissent. This case involves certain water rights, and the appeal is by plaintiffs from a judgment in favor of defendants, from an order denying their motion for a new trial, and from an order denying the plaintiffs' motion to strike out defendants' cost bill, and refusing to strike out certain items in said bill.

There was an appeal to this court from a former judgment in favor of defendants, wherein the judgment was reversed and a new trial ordered. The decision on that appeal is to be found in 115 California Reports, commencing at page 496, where the general features of the case are stated. The defendants claim the water rights which they assert here through J. D. Hines and his successors in interest; and it is beyond all question that defendants and their predecessors have since the year 1883, and under claim of right, continuously diverted the waters of San Antonio creek to the extent of seventy-eight and seventy-seven one-hundredths inches, measured under a four-inch pres-

sure, by means of a certain flume and ditch, when that amount was flowing therein, and when less than that amount was so flowing in the creek, they have thus diverted the whole of said waters; and the court correctly and upon sufficient testimony so found. The only important question on both trials was whether or not during two or three years of the first appropriation and use by Hines the water was used for a beneficial purpose. On the former appeal this court held that while it was clear that defendants and their predecessors had actually and continuously diverted the said amount of waters since 1883, the evidence was not sufficient to show that Hines had diverted the same for a beneficial purpose; and for that reason the judgment was reversed. At the second trial the superior court reached the same conclusions at which it arrived at the first trial, although the findings are in many respects much fuller than they were before. The evidence at the last trial is certainly to some considerable extent different from that at the first trial, and more favorable to the defendants. The reversal on the former appeal seems to have been based to a very great extent upon an expression in the testimony of the witness E. S. Hall, that Hines irrigated the hillsides of his land for the purpose "of holding the water." At the last trial, however, the testimony of Hall was a great deal fuller that at the former trial; and he explained that Hines, in addition to irrigating certain small orchards and alfalfa, irrigated the hillsides for the purpose of raising grass as feed for a large number of cattle which Hines then had. This certainly was a beneficial purpose within the meaning of the law on that subject. Of course, everyone who appropriates and diverts water does it, in a certain sense, for the purpose of holding it; and taking Hall's testimony in the most adverse sense to defendants it can be construed as nothing more than meaning that Hines perhaps intended that when his orchards should become larger and require more water he would apply part of the water employed for the irrigation of the grass to the irrigation of his orchards and other crops which he might subsequently raise on the lands; and as was said by Justice Field in *Atchison v. Peterson,* 20 Wall. 514: "A different use of water subsequently does not affect the right." This principle also applies to the sub-

sequent use by defendants of the water for certain other purposes.

As to the question whether or not the water diverted by Hines was more than was reasonably required to irrigate his land the evidence was conflicting, and there was certainly sufficient evidence to warrant the finding of the court on that subject. It is to be noticed that the diversion was made by an open ditch and flume, a plan very different from the more modern system of pipes and reservoir. The court further found that while the creek at times furnished water enough to fill the ditch to the extent of seventy-eight and seventy-seven one-hundredths inches, yet after the commencement of the irrigation season the water in the creek rapidly diminished—in some seasons to ten, and even to five inches—and that the use of the full capacity of the ditch during the early part of the season in fully saturating the land was necessary to provide against the very small amount of water that could be obtained later. Looking, therefore, over the whole of the evidence in the case, I do not feel warranted in saying that it was insufficient to support the finding that the amount of water stated therein was diverted by the defendants and their predecessors for a lawful and beneficial purpose.

I do not think that property in ditches and water rights which have been established and held for many years should be jeopardized by attacks of as light a character as those relied on in the case at bar; and when such attacks have been held by the trial court to be unwarranted I do not think that its finding should be disturbed, and long established property rights upset, upon such showing as is made here by appellant. In my opinion the judgment should be affirmed.

Rehearing denied.

McFarland, J., dissented from the order denying a rehearing.