[S. F. No. 2276.  Department Two.—July 14, 1902.]

## W. F. FISHER, Respondent, v. JULIA M. FEIGE et al., Appellants.

WATER RIGHTS—RIPARIAN PROPRIETORS—IMPROPER INJUNCTION—RIGHTS NOT PRESERVED—DIVERSION NOT SHOWN.—A perpetual injunction restraining upper riparian proprietors from in any manner obstructing, or impeding or hindering the natural flow of the waters of the stream at any point above the plaintiff's riparian lands, without preserving any rights to the defendant, except to take water for domestic purposes and for stock, and without any averment or finding that the defendants have diverted any water from the stream, cannot be permitted to stand.

ID.—RESTRAINING LAWFUL ACTS—FELLING OF TREES—EVAPORATION—DAMNUM ABSQUE INJURIA.—An injunction against the lawful acts of the cutting and felling of timbers and trees in the channel and upon the banks of the stream, upon the land of the upper riparian proprietors, cannot be sustained upon the ground that it lets in the sun and causes more evaporation. Any incidental drainage which might come to the lower proprietors from such lawful acts is *damnum absque injuria.*

ID.—DAM.—An upper riparian proprietor may build a dam upon his own land, provided he does not thereby appreciably diminish the amount of water which would naturally flow on to the land of his neighbor.

ID.—FINDING OF SPITE AND ILL-WILL—MOTIVE OF LAWFUL ACTS.—A finding that the acts of the defendants were done ''solely for the purpose of injuring the plaintiff and damaging his said property,

and out of spite and ill-will toward the plaintiff,'' does not show that the lawful acts of the defendant thereby became unlawful. As a general rule, no use of property which would be legal, if due to a proper motive, can become illegal because it is prompted by a motive which is improper, or even malicious, and the lawfulness of the acts enjoined, where no diversion was caused thereby, cannot depend upon the motives by which they were done, or may be done in the future.

ID.—FELLING OF TREES INTO STREAM—INJURY TO DOMESTIC USE—FIND-INGS.—The upper riparian proprietors might be enjoined from felling trees into the stream, and allowing them to decay therein, if the water was thereby made unfit for domestic use; but findings are not sufficiently certain and specific to support such an injunction where they do not show that the injury done to the quality of the water was material, and the court finds that all of the damage done to the plaintiff by all of the alleged acts of the defendants amounted to only one cent.

APPEAL from a judgment of the Superior Court of Napa County. E. D. Ham, Judge.

The facts are stated in the opinion of the court.

O'Brien, O'Brien & O'Brien, for Appellants.

T. B. Hutchinson, and F. E. Johnston, for Respondent.

McFARLAND, J.—This is an appeal by defendants from a judgment in favor of plaintiff.

The plaintiff is a lower riparian proprietor on a certain watercourse, and defendants are upper riparian proprietors thereon. The action was brought to recover damages in the sum of five thousand dollars for certain alleged interferences by defendants with the flow of the water in the stream, and for a perpetual injunction restraining defendants from their repetition of the alleged wrongs. The court found that plaintiff was damaged in the sum of one cent by the alleged wrongs, for which amount judgment was rendered; and by the judgment defendants were also perpetually enjoined from doing certain acts. Defendants appealed from the judgment.

It is quite clear that the judgment, as it stands, cannot be rightfully affirmed. There is no averment or finding that defendants have diverted any water from the stream. It is averred that along and adjacent to the stream as it flows through defendants' land there is a heavy growth of timber, which, before the alleged wrongful acts of defendants, pro-

tected the waters of the stream from evaporation by drying winds and the rays of the sun, and that defendants have cut and felled a large number of trees, and thus let in the sun and the wind and caused the waters to be diminished by evaporation, so that not as much flowed down on to plaintiff's land as formerly; and that they threatened to fell more of said trees in the future. It is also averred that defendants have erected certain dams or embankments across the stream by which the waters have been prevented from flowing down the channel of said stream "as they have been accustomed to flow," and from flowing into and upon the land of plaintiff, "as they otherwise would have flowed." It is also averred that defendants caused about ten trees to be felled into said stream, and allowed them to remain there, and that this rendered the waters unpalatable and unwholesome. It is also averred that defendants' land is wild and untilled, and is not susceptible to cultivation. The foregoing constitute the main averments upon which plaintiff bases his prayer for damages and injunction,—it being averred that defendants threaten to continue the said acts. It is also averred, and found by the court, that said acts were done by defendants "solely for the purpose of injuring the plaintiff and damaging his said property, and out of spite and ill-will towards the plaintiff."

As both court and counsel seem to have attached considerable significance to the alleged motive which led defendants to do the acts complained of, it may be proper to briefly notice that subject. In civil cases, of the character of the one at bar, the general rule, no doubt, is, as stated in *Mayor etc. of Bradford* v. *Pickles* (1895), App. Cas. 587, that "no use of property which would be legal if due to a proper motive can become illegal because it is prompted by a motive which is improper or even malicious." But there may be cases where the very question of the legality of an act would depend upon the purpose for which it was done. This is particularly so with respect to the use of water under the law of this state on that subject. For instance, a riparian owner in California has a right to a reasonable use of the water of a natural stream running through his premises for the purpose of irrigating his riparian land; and this includes the incidental right to divert on to his land what, under all the circumstances, would be a reasonable amount of the water, by dams and other necessary appliances. And in an action by a lower against an upper

riparian owner for diversion of water, the latter could successfully defend by showing that he had only used a reasonable amount of the water to irrigate his land; but there would be no such defense if it appeared that he diverted the water merely to let it run to waste, and did not make, nor intend to make, any beneficial use of it for irrigation, or that he had carried it to non-riparian lands. He could not lawfully, any more than could one claiming merely by appropriation, thus divert the water without applying it to a beneficial use.

But in the case at bar there was no diversion; and under the facts found we cannot see how the lawfulness of the acts enjoined can depend upon the motives by which they were done, or may be done in the future.

It is found that the defendants did fell trees on their lands, and threatened to fell more, the effect of which was, and would be, to let in the sun and winds, and thus increase evaporation. It was also found that they had built some dams in the stream by which the waters were prevented from flowing "as they otherwise would have flowed"; but there is no finding that these dams prevented the usual amount of water from reaching plaintiff's land. It was also found that the land of defendants is wild and untilled, and, "for the greater part, is not susceptible of cultivation."

There is also a finding,—somewhat obscured by being mixed up with other matters in finding No. VI,—that defendants felled some trees in the stream by which the waters were rendered unpalatable and unwholesome, and that they threatened to fell other trees into the stream, there to remain and decay, whereby the waters of said stream will be rendered unfit for household and domestic purposes. The foregoing are substantially the findings upon which the injunction is based. The injunction is most sweeping in its terms. By the judgment the defendants are "*perpetually* enjoined and restrained from *in any manner* obstructing or impeding or hindering the natural flow of the waters of that certain stream at any point therein or thereon *above the said lands of plaintiff*," and also "from cutting or felling the timbers and trees growing in the channel and upon the immediate banks of said stream at any point *above the said lands of the plaintiff*, whereby the said stream will be exposed to the rays of the sun and the waters thereof lost or materially diminished

by evaporation.'' They are also enjoined from felling any trees into the stream and allowing them to remain there and decay. No right is preserved to defendants, except to take water for domestic purposes and for stock.

It is evident that very little, if any, of this injunction can be sustained. It is quite apparent that cutting trees upon one's own land is a lawful act, which cannot be restrained because it ''lets in the sun'' and causes more evaporation; any incidental damage which might come to a lower riparian owner from such lawful act would clearly be *damnum absque injuria.* And, then, a man may build a dam across a stream on his own land, provided that thereby he does not appreciably diminish the amount of water which should naturally flow on to the land of his neighbor below. But, in addition, the judgment in this case perpetually prohibits defendants from ever exercising many of the undoubted rights of riparian owners. They are allowed only to use ''so much of the waters of said stream as may be necessary for their household and domestic purposes, and for water for their stock.'' There is not even any provision for changing conditions. The defendants are perpetually cut off from ever using the water for irrigation, or as motive power, or for fishponds, bath-houses, etc., or for ornamental and many other purposes for which a riparian proprietor may, in a measure, control the stream on his own land, if he does not thereby materially diminish its flow on to lands below, or appreciably adulterate its quality.

No doubt, the defendants could be enjoined from felling trees *into* the stream, if thereby the water was made unfit for domestic use; but on that subject the findings should, we think, be more certain and specific. It does not fully appear that the injury thus done to the quality of the water was material; and the finding as to that matter is rather inconsistent with the other finding, that all the damage done by all of the alleged acts of defendants amounted to only one cent. If there be another trial, there should be a fuller finding on this subject; and also as to whether the dams alleged to have been made by defendants on their own land materially lessened the flow of the water on to the land of plaintiff.

The judgment appealed from is reversed.

Temple, J., and Henshaw, J., concurred.