[Civ. No. 3721. Second Appellate District, Division One.—January 24, 1922.]

MAY K. RINDGE et al., Appellants, v. THE CRAGS LAND COMPANY (a Corporation), et al., Respondents. [1]

[1] WATERS AND WATER RIGHTS—RIPARIAN OWNERSHIP—APPROPRIATION—COMBINED RIGHTS.—A person may be possessed of rights as to the use of the waters in a stream both because of the riparian character of the land owned by him and also as an appropriator.

---

1. Nature of riparian rights, notes, 9 **Ann. Cas.** 1235; **Ann. Cas.** 1913E, 709; **Ann. Cas.** 1915C, 1026.

[2] ID.—RELATIVE RIGHTS OF RIPARIAN OWNER AND APPROPRIATOR.— An appropriator can gain nothing as against riparian rights which have attached, regardless of whether the water has been put to any beneficial use upon the land.

[3] ID.—RIPARIAN OWNERSHIP—WATER SUBJECT TO APPROPRIATION.— Where water has not been put to any beneficial use by the riparian owner, only the excess over and above what might reasonably be subjected to a beneficial use is subject to appropriation.

[4] ID.—PUBLIC LAND—RIPARIAN RIGHTS.—A riparian right does not attach to land held by the government until the land has been transferred to private ownership, and an appropriator who has in sufficient manner taken possession of the waters of a stream and actually subjected them to beneficial use may claim a continuance of the use, although such use leaves the government land without sufficient to supply riparian needs.

[5] ID.—APPROPRIATION OF WATER UPON PUBLIC LAND — RIGHT OF RIPARIAN OWNER.—A riparian owner, being insufficiently supplied with water by the flow of a stream, and anticipating the attaching of other riparian claims when the government land above him may be transferred to private ownership, may, upon such government land, make an appropriation which will be good, although it may have the effect to rob entirely the upper property of any riparian right in the stream, the only condition being that the total water claimed under the combined rights does not amount to more than is reasonably necessary to satisfy the necessary uses to which it is designed to be put.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank G. Finlayson, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Anderson & Anderson and Nathan Newby for Appellants.

Meserve & Meserve and Mott & Cross for Respondents.

JAMES, J.—Plaintiffs brought this action to secure equitable relief of several kinds, all designed to protect rights asserted to be held by them to the use of waters flowing in Malibu Creek, in the county of Los Angeles. Defendant Crags Land Company owns land immediately above and adjoining that of plaintiffs. At a point on the former's land Triunfo and Las Virgines Creeks converge to form Malibu Creek, which latter flows thence and through the

lands of plaintiffs to the Pacific Ocean. It was asserted that
the defendants had, by the erection of a dam on Triunfo
Creek, interfered with the natural flow of the water feeding
into Malibu Creek. It was also asserted that in another
canyon called "Morrison," wherein there was a spring which
fed its waters into Triunfo Creek, defendants had cut off
the supply at the spring by conducting the water away
through a pipe and subjected it to their own uses. Plaintiffs
claimed not only that their riparian right to use the waters
of Malibu Creek had been interfered with by the acts com-
plained of, but that a further right of the plaintiff May
K. Rindge, as an appropriator of 100 inches of water from
the stream, had been also affected to that plaintiff's damage.
The prayer in effect was that plaintiffs' title to the water
rights be quieted; that maintenance of the dam be enjoined,
and that the court determine the relative riparian rights
of the plaintiffs and defendants to the use of the waters
which furnished the flow in Malibu Creek. The trial judge,
after a lengthy hearing and the taking of a great amount
of evidence, included in which were two views made by the
judge of the lands, streams, and locations involved, entered
findings and judgment. The court determined that the
dam erected on Triunfo Creek did not interfere with the
flow of the water naturally passing down that creek, nor
with the surface or undersurface flows which contributed to
make up the water which ordinarily reached the land of the
plaintiffs and became a part of Malibu Creek. It determined
that as to the spring in Morrison Canyon (that spring being
upon the land of the defendants), the water thereof belonged
to the defendant Land Company, and that, when allowed to
run in its natural state and condition, this water was not
sufficient in quantity to reach Triunfo Creek, and, hence, did
not and could not furnish any part of the water eventually
appearing in Malibu Creek. As the determination of the
court regarding the Morrison Canyon water is fully sus-
tained by the evidence, that subject may be here left out of
a further discussion of the case. Referring now to the dam,
as to which the plaintiffs have made their first complaint:
This dam was built across a narrow gorge on Triunfo Creek,
the sides and bottom of which were of rocky material. The
dam when completed was about 50 feet in height and about
147 feet in length across the top thereof. The width at the

bottom was a great deal less footage, owing to the slope of the canyon walls. The dam, when filled up to the overflow point, caused the water to back up through the canyon gorge for a distance of about 5,300 feet. No impediment was offered by the dam to a free overflow of the water once the reservoir basin had been filled. The dam was not used by the defendants for any purpose other than to impound the waters held behind it, and none of those waters were taken from the damsite. It was the claim of the plaintiffs that the existence of the dam caused such an obstruction to the flow of natural waters in the Triunfo Canyon as to cause great loss thereof, and that the quantity of water which this creek furnished as a tributary to Malibu Creek, both surface and underground, became greatly diminished. The court, as we have stated, heard a great deal of evidence, that of many engineering experts included, which was to the point that the existence of the dam and consequent impounding of the waters caused no loss whatsoever to the running or percolating supply feeding into Malibu Creek— in fact, some of the testimony indicated that, by the existence of the dam and the collecting of storm waters, which, had they not been caught and impounded, would have run off into the sea, there would be a conservation of the supply and that the summer contribution of Triunfo Creek to the waters of Malibu Creek would be increased. We have examined a great deal of the evidence as it is shown in a voluminous record presented with this appeal. It would extend this opinion to an unnecessary length to attempt to present any comprehensive abstract thereof. It may be sufficient to say that there was evidence of a substantial kind sustaining the findings of the trial judge that the erection of the dam on Triunfo Creek in nowise caused the damage which plaintiffs, in their complaint and the amendments thereto, asserted had been sustained by them, or any damage whatsoever. Defendants had the right to maintain the dam in the manner described, being responsible and subject to restraint only in the event of a showing of real detriment suffered by plaintiffs. (*Fisher* v. *Feige,* 137 Cal. 39 [92 Am. St. Rep. 77, 59 L. R. A. 333, 69 Pac. 618]; *San Joaquin & Kings River Canal & Irr. Co.* v. *Fresno Flume etc. Co.,* 158 Cal. 626 [35 L. R. A. (N. S.) 832, 112 Pac. 182]; *Gallatin* v. *Corning Irr. Co.,* 163 Cal. 405 [Ann. Cas. 1914A 74, 126 Pac. 864].)

Appellants complain that the findings of the court are inconsistent wherein the issue as to the effect of the dam is determined. We think that sufficient appears in the findings to make it clear that the court considered all of the elements of possible damage and, so considering, intended to determine the issue adversely to the plaintiffs. Any inconsistency in findings must be reconciled in such a way as to support the judgment of the court. (*American Nat. Bank* v. *Donnellan*, 170 Cal. 15 [Ann. Cas. 1917C, 744, 148 Pac. 188].)

Plaintiff May K. Rindge claimed the right to water asserted to have been obtained under appropriations made by herself and predecessors to the extent of 100 miner's inches. It was shown in evidence that, at a time when the title to all the property of the defendants was in the government, plaintiff and the predecessors of plaintiff had gone upon that land and established a point of diversion and performed necessary acts to complete an appropriation of water from Malibu Creek. From that time forward the water, under this claim of right by appropriation, was regularly taken from Malibu Creek and used for irrigation purposes upon the lands of said plaintiff and her predecessors. The point of diversion was changed on two occasions. There was evidence sufficient to show that while a much larger quantity of water was taken out at the points of diversion, not more than 4.95 inches was subjected to beneficial use, as a large part of the water entering the flume at plaintiff's intake escaped by leakage and flowed back into the stream. The court's findings agreed with this evidence and, as the extent of the appropriated right is measured by the quantity of water actually put to a beneficial use, the decision on that point must be deemed to be correct. (*Santa Paula Water Works* v. *Peralta*, 113 Cal. 38 [45 Pac. 168]; *Riverside Water Co.* v. *Sargent*, 112 Cal. 230 [44 Pac. 560]; *Leavitt* v. *Lassen Irr. Co.*, 157 Cal. 82 [29 L. R. A. (N. S.) 213, 106 Pac. 404].) The court did, however, notwithstanding that it was found that the plaintiff May K. Rindge and her predecessors had by sufficient acts made an appropriation of 4.95 inches of water from the stream, deny to said plaintiff any judgment making certain and continuing that right, upon the apparent ground that a land owner, claiming rights to the use of water in a stream, could not claim both

as riparian owner and as an appropriator. On the findings as made, unless the conclusion of law deduced by the trial judge against the plaintiff's right in the regard last mentioned is correct, the judgment must be modified. The trial judge first determined the number of acres owned by each of the parties which were riparian to Malibu Creek and its tributaries; he determined that the available supply of water was insufficient to meet the riparian needs of the respective parties and determined that each should have a continuous flow of the water in consecutive period of hours, in the proportions as their respective holdings bore to each other.

[1] It is established in California that a person may be possessed of rights as to the use of the waters in a stream both because of the riparian character of the land owned by him and also as an appropriator. [2] An appropriator can gain nothing as against riparian rights which have attached, and, once such rights have become affixed, they continue and are not lost, regardless of whether the water has been put to any beneficial use upon the land; the right is one continually and perpetually appurtenant. [3] There would remain, then, as subject to appropriation, only the excess water over and above what might reasonably be subjected to a beneficial use by the lands bordering the stream. [4] As to land held by the government it is not considered that a riparian right has attached until that land has been transmitted to private ownership; hence an appropriator, having in sufficient manner taken possession of the waters of a stream and actually subjected them to a beneficial use, may claim a continuance of the use, even though that use leaves land which belonged to the government at the time of the appropriation without sufficient to supply riparian needs; hence the subsequent owner takes his ownership as affected by the right of the appropriator. "An appropriation does not of itself deprive any private person of his rights; it merely vests in the appropriator such rights as have not previously become vested in private ownership, either by virtue of some riparian right or because of prior statutory or common-law appropriation and use. It affects and divests the riparian rights otherwise attaching to public lands of the United States solely because the act of Congress declares that grants of public lands shall be made subject to all water rights that may have previously accrued to any person other than

the grantee. An appropriation of water and use thereunder does not become effective to divest private rights in a stream, unless it has been continued adversely thereto for the period of five years under such circumstances as to gain a title by prescription, and then only to the extent of the use." (*Duckworth* v. *Watsonville etc. Co.*, 150 Cal. 520 [89 Pac. 338].) **[5]** And thus it may happen that a riparian owner, being insufficiently supplied with water by the flow of a stream, and anticipating the attaching of other riparian claims when the government land above him may be transferred to private ownership, may, upon such government land, make an appropriation which will be good, although it may have the effect to rob entirely the upper property of any riparian right in the stream—this to be qualified only with the condition that the total water claimed under the combined rights does not amount to more than is reasonably necessary to satisfy the necessary uses to which it is designed to be put. As to the proposition last announced, see *Senior* v. *Anderson*, 130 Cal. 290 [62 Pac. 563], where the court says: "Her riparian rights could only entitle her to a reasonable use of the water upon her riparian lands, but having before she acquired title from the United States, appropriated more water than was required for beneficial uses upon said land, she could acquire no right to any additional quantity under the law of riparian rights." And upon the general subject, see *Healy* v. *Woodruff*, 97 Cal. 464 [32 Pac. 528]; *Van Bibber* v. *Hilton et al.*, 84 Cal. 585 [24 Pac. 308, 598]; *Cave* v. *Tyler*, 133 Cal. 566 [65 Pac. 1089]; *Smith* v. *Hawkins*, 127 Cal. 119 [59 Pac. 295]; 3 Farnham on Waters and Water Rights, p. 2020; 1 Kinney on Irrigation, 2d ed., p. 902; 1 Wiel on Water Rights, p. 346. Upon the facts found we think the court should have determined first that the plaintiff May K. Rindge was entitled to take from Malibu Creek 4.95 inches of water continuous flow; that this appropriated water should be deducted from the proportion assigned to the defendant Crags Land Company for riparian uses. This would require a readjustment of the proportions in which the parties would be entitled to share in the remaining water. In other words, the judgment should be that the land of the Crags Company, by reason of the prior appropriation by May K. Rindge, has had its riparian right to waters flowing into Malibu Creek diminished by the

amount of that appropriation, while the riparian rights of the plaintiffs are not diminished at all on account thereof. The judgment will not, of course, affect rights which persons not parties to the action may have in the waters of the several streams.

We think no substantial error was committed by the trial court in its rulings admitting or rejecting testimony.

The judgment in so far as it determines that May K. Rindge possesses no right to use the waters of Malibu Creek as an appropriator, and as it determines the proportions in which and the manner by which the parties shall share in such waters, or those tributary, as riparian owners, is vacated; as to such matters the trial court is directed to amend its, conclusions of law and the judgment, to accord with the conclusions expressed in this opinion. As to all other matters adjudicated, the judgment is affirmed. The parties hereto shall bear their own costs incident to the appeal.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 23, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, J., *pro tem.*, was acting.