[Civ. No. 1407.    Third Appellate District.—December 13, 1917.]

## CHARLES Y. HEPLER et al., Respondents, v. C. E. WRIGHT et al., Appellants.

APPEAL—ALTERNATIVE METHOD—RECORD.—Where an appeal is taken under the alternative method, and neither party prints in his brief such portions of the record as he desires to call to the attention of the appellate court, the typewritten transcript will not be examined.

WATER RIGHTS—SUFFICIENCY OF FINDINGS.—In an action to determine water rights, for an injunction and damages, a finding that plaintiff's predecessors in interest did not appropriate all the waters of the stream carrying ten and seventy-five one-hundredths inches of water, and that such predecessors appropriated six inches, while lacking in definiteness, impliedly shows that defendants are entitled to the difference between the plaintiff's appropriation and the total flow.

APPEAL from a judgment of the Superior Court of Plumas County, and from an order denying a new trial. J. O. Moncur, Judge.

The facts are stated in the opinion of the court.

H. B. Wolf, and L. N. Peter, for Appellants.

M. C. Kerr, for Respondents.

CHIPMAN, P. J.—Plaintiffs bring the action to have their right determined to six inches of water measured under a four-inch pressure, for an injunction restraining defendants from diverting the same or any part thereof, and for damages in the sum of five hundred dollars for defendants' alleged interference therewith.

It is alleged in the second amended complaint that plaintiffs Charles and Emma Hepler now are and for more than twenty years last past have been the owners of and have occupied, used, and farmed certain lands, to wit, lots 2 and 3 of block 7 of the town of Crescent Mills, Plumas County, California. That the said plaintiffs last named and plaintiff Kelley are the owners and for more than twenty years last past they and their predecessors in interest have been the owners, in possession, and occupying lot 1 of block 7 aforesaid.    That plain-

tiffs Charles and Emma Hepler are in possession and entitled
to the possession of said lot 1, and are farming the same
under lease with their said co-owner, and are the owners of
all the crops now grown on said lands or to be grown thereon.
That plaintiff Kelley has no interest therein. "That all of
said lands are agricultural in character and irrigation is
necessary on all of the said lands." That by means of irriga-
tion, plaintiffs Charles and Emma Hepler for more than
seven years last past have raised and produced and are now
·raising and producing on all of said lands valuable crops of
fruits, vegetables, hay, and other crops. That the irrigating
season for said lands is from April 1st to and including Octo-
ber 1st of each year, and "irrigation is necessary on said
lands during all of said time." "That a stream of water
flows from what is generally known as and called the Green
Mountain No. 6 Tunnel . . . carrying during the irrigat-
ing season, about eleven inches of water, measured under a
four-inch pressure." It is then alleged "that more than
twenty years ago, the predecessors in interest of the plaintiffs
went into and upon said stream and appropriated six inches
of water, measured under a four-inch pressure, and erected
dams across said stream and dug ditches leading from said
stream to and upon the lands of plaintiffs herein; and by
means of said dams and ditches diverted from said stream
said six inches of water, measured as aforesaid, to and upon
the lands of said plaintiffs as described in . . . this com-
plaint; that said six inches of water was and now is divided
and used upon said ·above-described lands in the following
amounts and proportions: Upon lots 2 and 3 of block 7 of
said town of Crescent Mills hereinbefore described: four
inches of water measured under a four-inch pressure; upon
lot 1 of said block No. 7 . . . two inches of water, measured
under a four-inch pressure. That all of said water was and is
used on said lands for irrigating, for domestic purposes and
for watering stock, and said water and the whole thereof ever
since has been and now is necessary for said purposes on said
lands in the proportion and to the extent above set forth."
That prior to the commencement of this action, and at the
commencement of the action and ever since, Charles and
Emma Hepler have been and now are entitled to the posses-
sion and the use of the flow of said waters to the extent afore-
said, and they are now using said water on said lands. That

on or about April 23, 1913, defendants, acting in concert and with a common purpose, diverted all of the waters flowing in said stream away from the lands of the plaintiffs herein and prevented any of the said waters from flowing to the plaintiff's lands, except when such diversion was interfered with by plaintiffs, and defendants do now threaten to divert and conduct all of said waters away from plaintiffs' lands and will do so unless restrained by this court. That the crops growing on said lands are in such a state of cultivation and growth that if the flow of water to plaintiffs' lands be interfered with by defendants and diverted from plaintiffs' lands, the said crops will be "stunted in growth and utterly destroyed and the damage accruing to said plaintiffs . . . will be irreparable and of such a nature that the exact amount thereof cannot be accurately measured." Alleges the insolvency of defendants and their inability to respond in damages. Alleges that plaintiffs Charles and Emma Hepler, by reason of the said diversion of said waters by defendants, have been deprived of the beneficial use of the same, and have sustained damages thereby in the sum of five hundred dollars, but that plaintiff Kelley "has no interest in any of the crops now upon said lands and has not been damaged by said diversion, and does not claim any damages therefor." It is further alleged "that the defendants claim and assert some right or interest in and to the waters of said stream to the extent of six inches measured under a four-inch pressure, so used and appropriated by plaintiffs and their predecessors in interest, adverse to said plaintiffs, but that said claims of said defendants are, and each of them is, without any right or title whatsoever."

The plaintiffs pray for an order of the court restraining defendants and their agents "from diverting from said stream any of the waters thereof to the extent of six inches, measured under a four-inch pressure, and to forthwith desist from diverting or attempting to divert any part of said six inches of water, measured as aforesaid, away from the lands of plaintiffs. . . . That plaintiffs have a judgment and decree of this court that they are the owners of, in the possession of, and entitled to the possession of the aforesaid waters to the extent of six inches, measured under a four-inch pressure and measured and divided as set forth herein, and are entitled to have the same flow to, upon, and across plaintiff's

said lands, there to be used for irrigating, domestic purposes, and for watering stock; and that the defendants have no right or interest in and to said six inches of water or any part thereof. That plaintiffs Charles Y. Hepler and Emma K. Hepler recover from the defendants the sum of five hundred dollars as damages," and to such other relief as is agreeable to equity.

A general and special demurrer to the second amended complaint was overruled and defendants answered. They deny either directly or upon information and belief substantially all of the material averments of the complaint. Admit that on or about the twenty-third day of April, 1913, they, "with unity of purpose and by concerted action, diverted all the waters flowing in said stream away from the lands of plaintiffs herein." Admit that they did, at the date of the commencement of the action, threaten to divert and conduct all of said waters away from the lands of plaintiffs; admit that defendants claim and assert right to and interest in the waters of said stream to the extent of six inches measured under four-inch pressure, but deny that such amount was used or appropriated by plaintiffs or their predecessors or otherwise, but deny that claims of defendants are without right. "On the contrary, defendants allege that more than twenty-five years ago, their predecessors in interest, under and by virtue of an agreement made and entered into to and with the Green Mountain Mining Company, the then owner of what is known as No. Six Tunnel, . . . constructed a ditch by means of which all of the water flowing from said tunnel was diverted away from said tunnel and to and on the lands of defendant Frohlich herein, and there and on other lands used for household, domestic and irrigation purposes, and that such use on said other lands was with the consent of the predecessors of defendants and under an agreement with them."

It is alleged as a further defense that the predecessor in interest of defendant Frohlich, more than twenty-five years ago, and prior to any use of the waters hereinafter mentioned and described, by any person whomsoever for household or domestic uses, went in and upon said Green Mountain tunnel and constructed a ditch therefrom leading to and on certain lands situated as described in the answer, and there used the same for household, domestic, and irrigation purposes, and

upon information and belief it is alleged that each and every year since the date of the appropriation of said water as aforesaid and the construction of said ditch by defendant Frohlich's predecessor said water, and the whole thereof, flowing from said No. 6 tunnel has been conveyed through said ditch on to the lands of the predecessor of said defendant Frohlich and to other lands adjacent thereto, and there used for household, domestic, and irrigation purposes. Alleges, further, that on information and belief plaintiffs Charles and Emma Hepler for about seven years last past have been taking and using water from said ditch without the knowledge and consent of the predecessor of defendant Frohlich, and by stealth, and that at all times when the said defendant Frohlich's predecessor discovered such use by plaintiffs he returned all of said water into said ditch and stopped and prevented such use thereof. As a further defense, defendants allege that prior to April 22, 1913, and at a time when defendant Frohlich was negotiating the purchase of said water and said ditch and the whole thereof, together with certain land described, at the house of one Roedde, defendant Frohlich communicated to plaintiff Charles Hepler the fact of his said contemplated purchase, and said Hepler was then and there asked if he had any interest in the waters flowing in said ditch or from said lower No. 6 tunnel, or whether he claimed any interest in the same, and he, the said Hepler, then and there stated that he did not own or claim to own any interest in the waters flowing in said ditch or from said tunnel, and that he had a water right of his own for his said lands. That "thereafter defendant Frohlich purchased from and of W. F. Roedde said lands, together with said water right and said ditch line." And for a further defense, alleged on information and belief that neither of said plaintiffs has ever made any claim in any manner to W. F. Roedde of any right to divert any of the waters flowing from said No. 6 tunnel, and that plaintiffs have secured water for irrigation purposes on their said lands from springs situated within said lands and "from what is known as the Dixie Canyon ditch leading from Dixie Creek, over and across said lands." Defendants pray that plaintiffs take nothing by their action, "and for such other and further relief as to the court may seem meet."

The cause was tried by the court without a jury and the court found that substantially all of the averments of the complaint are true. The court found that the stream of water flows from the said Green Mountain tunnel "carrying during the low stages water amounting to ten and seventy-five one-hundredths inches, measured under a four-inch pressure." That the predecessors in interest of plaintiffs more than twenty years ago appropriated six inches of water measured under a four-inch pressure, flowing from said tunnel, and diverted and used the same to the extent of six inches as alleged in the complaint and in the proportions as therein mentioned, to wit, four inches upon lots 2 and 3 and two inches upon lot No. 1. That said water was used in the manner and for the purposes as alleged in the compaint, and that prior tô the commencement of the action plaintiffs were and now are in peaceable possession of said waters to the extent of six inches measured under a four-inch pressure "when the said water was flowing from said tunnel to the extent of twelve inches, and one-half of said water flowing from said tunnel when said flow is less than twelve inches measured under a four-inch pressure." The court found that by reason of the diversion of said waters by the defendants as alleged in the complaint, the plaintiffs Charles and Emma Hepler have sustained damages to the extent of one hundred dollars.

Attention is particularly called to finding IX in the brief of defendants, which finding is as follows: "That defendants did not nor their predecessors in interest did not more than twenty-five years ago enter into an agreement with the Green Mountain Mining Company, the then owner of what is known as the Green Mountain No. 6 Tunnel for all of the waters of said tunnel, and did not by means of a ditch constructed convey all of the waters of said tunnel to and on the lands of defendant Frohlich herein; that said ditch constructed by the predecessors of interest of said defendant Frohlich was not of sufficient size to carry all of the water from said tunnel.

"That the predecessors in interest did go in and upon said Green Mountain tunnel and constructed a ditch therefrom to lands situate in section 24, township 26 north, range 9 east, M. D. M., and there used a portion of said water on said land for domestic, household, and irrigation, but that said predeces-

sors in interest did not appropriate and use all of said water and the said ditch was not of sufficient size to carry all of said water.''

It is further found that the use of said water by said Heplers has been with the knowledge of the defendant Frohlich and not by stealth. That neither defendant Frohlich nor his predecessors in interest has at all times returned said water into defendants' ditch upon discovery of its use by said Heplers, but, on the contrary, defendant Frohlich and his predecessors were at all times aware of the use of said water by the said Heplers. The court also found that at the time defendant Frohlich was negotiating the purchase of said water, as mentioned in the answer, at the house of said Roedde, plaintiff Charles Hepler did not state to said defendant Frohlich that he did not own or claim any waters flowing from said tunnel, nor did he state that he had a water right of his own for his lands other than the waters coming from said tunnel. The court found that plaintiffs had not secured water for irrigation purposes from springs situated within said lands nor from what is known as Dixie Canyon ditch, as alleged in the answer, but that the water used on plaintiffs' said lands for irrigation has come from said tunnel aforesaid.

As conclusions of law, the court found ''that plaintiffs are entitled to judgment for six inches of water measured under a four-inch pressure, flowing from Green Mountain No. 6 Tunnel . . . when there is twice that amount, or more, flowing from said tunnel, and when there is less than twelve inches, so measured, flowing therefrom, to one-half thereof, the said amount to be divided as follows, to be used on lots 2 and 3 of block 7 of the town of Crescent Mills, owned by Charles Y. Hepler and Emma K. Hepler the extent of four inches of said water measured under a four-inch pressure, and on lot No. 1 of said block 7 of said town of Crescent Mills, . . . to the extent of two (2) inches of said water measured under a four-inch pressure.''

The court also found that plaintiffs were entitled to the injunction prayed for, and that plaintiffs, Charles and Emma Hepler, recover from the defendants the sum of one hundred dollars damages and costs of suit herein. Judgment was entered accordingly.

The appeal is under the alternative method from the judgment and order denying defendants' motion for a new trial.

There are over four hundred typewritten pages of testimony, about an equal quantity of which was introduced by plaintiffs and defendants. In defendants' brief no part of the testimony on which they rely is given and none referred to except as will presently be noticed. In respondents' brief .not a word of testimony is quoted, and the only reference to it is in the following form—"see testimony of"—(the witness or witnesses), but the page or folio of the transcript is not given. The only testimony quoted in defendants' brief relating to their alleged right to all the water of said tunnel consists of extracts from the testimony of one Roedde, referred to in the findings, through whom defendants claim title, as follows: "William Roedde, direct examination by Mr. Wolfe: Q. Then what was done concerning water for the Roedde place? A. My mother didn't know what to do about it and so one day Mr. Rogers, who was there himself at our place, he said they were having quite— . . . Q. Were you present and heard the conversation? A. Yes, sir. Q. What was it? What was said at this time? You started to tell about Rogers being there; what was said concerning the water? A. He said they were getting quite a bunch of water in the tunnel and if it was high enough we could have that water and take a survey around it from the tunnel. Q. What was done then? A. We did take a survey around with a straight edge. . . . Q. After that? A. It was plenty high enough. Q. What did you do then? A. I commenced digging the ditch. Q. When did you complete the ditch? A. I completed it—I don't understand that question quite. Q. After you commenced work on the ditch, was work kept up until it was completed, until you got it built? A. Yes, sir. Q. Where did you build the ditch to? From what point to what point? A. I dug it clear on around back behind the house and around on the far end of our place. Q. Where did you commence at, from what point? A. At the blacksmith-shop. Q. Up at the Green Mountain tunnel, do you mean? A. Yes, sir. Q. You spoke of Charley Rogers; what was Charley Rogers doing, what connection, if any, did he have with the Green Mountain Company at that time? A. Well, he was superintendent and agent of the Green Mountain Company. Q. Was he in charge of the property and business and work of the company at that time? A. Yes, sir; he was. Q. After the completion of this ditch that you built, what did you do

with reference to the water coming out of the Green Mountain tunnel, if anything? A. It was all turned in the ditch.''

The only facts shown are that Rogers, the then superintendent of the Green Mountain Mine, gave Roedde permission to use the waters escaping from said tunnel; that Roedde built a ditch from the tunnel to his place, and ''all the water was turned into the ditch.'' He does not testify that the water was conveyed to his place, nor does he state where his place was, nor that he made any beneficial or other use of the water, nor when this was, nor how long he made any use of the ditch or the water. The brief states that these extracts from Roedde's testimony are in support of the issue that defendants, through their predecessors (Roedde), acquired title to all the water flowing from said tunnel. Obviously this testimony falls far short of establishing such issue.

Defendants printed in their brief some extracts taken from disconnected parts of the testimony of both plaintiffs. This testimony in no wise aids defendants' contentions. On the contrary, it tends, so far as it can be understood without recourse to omitted portions, to establish plaintiffs' case. It appears from this testimony that plaintiffs took up their residence on what was called the ''Leek place'' in 1906; that prior to that time, and at that time, water was brought from said tunnel to the Leek place and was used for domestic and irrigating purposes; that up to 1910, the water was first used at what was called the ''Cornell boarding-house'' at the time and on the lawn around the house, and what was not used passed to plaintiff's ditch; in 1910 the boarding-house burned and the water continued as before to pass over the Cornell place, sank into the ground for a short distance, and was picked up where it emerged and was conveyed to their land in plaintiffs' ditch. It is stated in respondents' brief, and not denied by appellants, that after 1910 no further use was made of the water by the company. The condition of the case is this—neither party has complied with the statute. Section 953c of the Code of Civil Procedure reads in part as follows: ''. . . In filing briefs on said appeal the parties must, however, print in their briefs, or in a supplement appended thereto, such portions of the record as they desire to call to the attention of the court.'' There are no portions of the record called to our attention in the way pointed out by the statute that can be of the slightest assistance to the

court in determining whether or not the evidence is sufficient to support the findings. Under such circumstances, we must decline to explore these four hundred and odd pages to sift out the wheat from the chaff. That we are fully justified in doing so, we refer to *Cunnison* v. *Miller,* 34 Cal. App. 267, [167 Pac. 890]. The court said: "The appeal is taken under the so-called and most unsatisfactory 'alternative method,' but appellant has failed to follow the statute in that no part of the record to which he desires to call attention is printed in his brief. Having omitted to comply with the direction of the statute in that regard, no duty is imposed upon this court to examine the typewritten transcript." (Citing *Marcucci* v. *Vowinckel,* 164 Cal. 693, [130 Pac. 430]; *Wills* v. *Woolner,* 21 Cal. App. 528, [132 Pac. 283]; *Miller* v. *Oliver,* 174 Cal. 407, [163 Pac. 357]; *Pasadena Realty Co.* v. *Clune,* 34 Cal. App. 33, [166 Pac. 1025]; *McKinnell* v. *Hansen,* 34 Cal. App. 76, [167 Pac. 887].)

In this state of the case we must presume that there was evidence sufficient to support the findings, and it is not contended that the findings do not support the judgment.

Defendants, however, present a question upon which they place special reliance. Plaintiffs have not claimed and do not claim, and the court does not award them, more than six miner's inches of the water flowing from said tunnel when there is at least twice that amount flowing therefrom, or one-half when less than that quantity. The court found that about ten and seventy-five one-hundredths miner's inches of water flow from said tunnel at low stage. Manifestly there is a quantity of water flowing from said tunnel which plaintiffs do not claim. Defendants, in their answer, claim all the water. The court on that issue made the findings above quoted—in effect, that defendants did not enter into the agreement alleged "for *all* of the waters of said tunnel," and did not "by means of a ditch convey all" of said waters, and that the ditch constructed by defendants "was not of sufficient size to carry *all*" of said water; that defendants did construct a ditch to certain land claimed by defendants from said tunnel and "there used a portion of said water on said land . . . but . . . did not appropriate and use *all* of said water, and the said ditch was not of sufficient size to carry *all* of said water." According to rules of logic, this is a finding that defendant constructed the ditch claimed by them of

capacity to carry *some* water; that defendants did appropriate and use on their lands *some* water, and that the ditch had the capacity to carry whatever this amount so used was. Defendants in their answer do not ask for any affirmative relief; they simply pray that plaintiffs take nothing by their action and "for such further relief as to the court may seem meet."

The plaintiffs in their complaint allege that defendants claim some right to six miner's inches of said water "adverse to said plaintiffs, but that said claims of said defendants are and each of them is, without right or title whatsoever." We think the finding complained of should have been more definite, and had the evidence been sufficient to enable the court to find the amount of water to which defendants are entitled and had defendants requested a finding on that subject, no doubt the court would have made it. Apparently defendants were content to rely upon the issue, as a complete defense to plaintiffs' action, that defendants were entitled to all the waters flowing from said tunnel. Plaintiffs insist that there was no evidence upon which the court could have made a finding of the definite quantity of water to which defendants were entitled, and hence the court could only find as it did in response to defendants' claim. Defendants have not called attention to any evidence that would have justified the court in making a specific finding as to defendants' right to any particular quantity of water. While the general rule requires that there should be a finding on every material issue, and while the finding in question is uncertain and evasive, the rule does not require a finding on an issue as to which there is no evidence. Furthermore, as between plaintiffs and defendants, it is conclusively established that of all the waters involved, plaintiffs are entitled at no time to exceed six inches measured under a four-inch pressure. The balance of the water by implication, as between the parties, belongs to defendants, and we do not see that they are injured by the form in which the finding is couched.

Defendants make the point that there is a misjoinder of causes of action and that the demurrer should have been sustained on the ground that plaintiff Kelley had no interest in lots 2 and 3, and that it appears by the complaint that there are two separate and distinct appropriations and diversions of water for two separate parcels of land. The complaint

35 Cal. App.—37

alleged that plaintiffs were the owners of lots 2 and 3, and joint owners with Kelley in lot 1, and that the alleged appropriation of water was for the benefit of these three lots, four inches thereof belonging to lots 2 and 3, and two inches to lot 1. As the appropriation of the water was in part for the benefit of lot 1, in which all the plaintiffs had an interest, we think Kelley was properly joined as plaintiff, and that it was not necessary that two separate actions should be brought to accomplish what readily could be attained in one action.

We can discover no ground for reversing the judgment or order, and they are, therefore, affirmed.

Burnett, J., and Hart, J., concurred.