[Sac. No. 3865. In Bank.—April 9, 1929.]

LOUIS P. JOERGER, Plaintiff and Appellant, v. PACIFIC GAS & ELECTRIC COMPANY (a Corporation) et al., Defendants; MT. SHASTA POWER CORPORATION (a Corporation) et al., Defendants and Appellants.

14

Jesse W. Carter and Annette Abbott Adams for Plaintiff and Appellant.

Thos. J. Straub, Chenoweth & Leininger, L. H. Susman and Carr & Kennedy for Defendants and Appellants.

TYLER, J., *pro tem.*—Action to quiet title to certain lands and water rights and for damages for interference therewith. The transcript is voluminous, consisting of many thousands of pages. The questions presented are numerous, the briefs and supplements thereto being made up of over 3,000 pages. A complete recital of the pleadings and the facts would extend our opinion to undue proportions. We will, therefore, state only those which, in our opinion, are necessary to a full understanding and proper disposition of the questions here presented. The issues are framed upon an amended and supplemental complaint containing four separate counts or causes of action, and an amended answer of defendants Mt. Shasta Power Corporation, hereinafter referred to as the Power Company, and the Red River Lumber Company, hereinafter referred to as the Lumber Company.

The first three causes of action are of equitable cognizance involving the quieting of title to lands and certain water rights owned by the plaintiff, and the fourth relates to damages alleged to have been suffered by reason of numerous torts or trespasses upon and interference by defendants with such lands and water rights. The case was tried before the court and a jury. The issues raised by the first three counts were considered equitable and were decided by the trial judge, and the issue as to damages raised by the fourth count was submitted to and decided by the jury. The Joerger ranch is owned by plaintiff and is a consolidation of what was at one time four different ranches. These ranches were known as the "Tucker Place," the "Grant Place," the "Smith Place" or "Smith-Braden" or "Smith-Schnittger Place" and the "Braden Place," and they were acquired by plaintiff during the years 1917 and 1920, the entire acreage consisting of some 1680 acres. The lands are situated in Shasta County and plaintiff has been engaged in farming portions thereof since the year 1917. A stream, known as Hat Creek, flows through a portion of

plaintiff's land in a northwesterly direction and Pit River flows along the northeasterly boundary thereof, and the two streams unite a short distance beyond the northwestern boundary of said lands. At the time plaintiff acquired this property, and for many years prior thereto, portions of all of these ranches, approximating some 530 acres, so it is alleged, had been irrigated with water from Hat Creek, conveyed on to the land by means of two ditches. One of these ditches diverted water from the west side of Hat Creek and conveyed it in a northerly direction, and was known as the "Tucker-Fitzpatrick Ditch" or "Tucker-Joerger Ditch." The other diverted water from the east side of said creek and conveyed the same in a like direction and was known as the "John Smith Ditch." Plaintiff's entire tract is somewhat irregular and a large portion of the cultivated area consists of hills, knolls, swales and depressions which have been cleared and cultivated without any attempt being made to level the land for scientific irrigation, its character rendering this impossible. The system employed by plaintiff and his predecessors in interest to irrigate the cultivated portion is known as the flood system. In the operation of this system large quantities of water are required in order to cover the irregular surface of the land, which quantities plaintiff claims to have acquired by user. The defendant Mt. Shasta Power Corporation is a subsidiary corporation to the Pacific Gas and Electric Company. These corporations are public utilities engaged in the manufacture and distribution of electricity for public use. The Lumber Company is a private corporation, to which the Power Company transferred its plant upon completion, but continued its operation under some agreement with the Lumber Company. These companies dispute, in part, plaintiff's claim to the waters.

The first count of the complaint, after alleging ownership in plaintiff and his predecessors in interest of the land in question and of the Tucker-Fitzpatrick ditch for over thirty years, recites that Hat Creek is, and from time immemorial has been, a natural stream, and is one of the largest tributaries of Pit River, into which it flows; that plaintiff and his predecessors in interest have by right diverted from Hat Creek 1,000 inches of water, measured under a six-inch pressure, for irrigation, watering stock and domestic purposes,

and that said water is appurtenant to a portion of plaintiff's lands; that the Power Company threatens to divert all the water of Hat Creek. The second cause of action alleges ownership of the John Smith ditch and the right to divert from Hat Creek through said ditch 1600 inches of water, under a six-inch pressure, for like purposes as stated in the first cause of action; that such right is likewise appurtenant to plaintiff's land, and threatened diversion by defendants is again alleged. The third cause of action alleges ownership in plaintiff of the Joerger ranch and recites the whole is riparian to Hat Creek and that plaintiff is entitled to 2,600 inches of water as necessary for irrigation, stock and domestic purposes. It is then further alleged that plaintiff and his predecessors in interest have at great expense cultivated and irrigated large areas of the ranch, and constructed ditches and other works so as to produce hay, feed, pasturage, vegetables and other crops and that in doing so they diverted, for more than twenty years under a claim of right, 2,600 inches of water under a six-inch pressure and that such amount was and still is necessary to irrigate plaintiff's riparian lands and plaintiff is entitled to such flow. Further allegations in this count recite that since the commencement of this action defendants have constructed a power plant on lands owned by one of them, situated on Hat Creek, immediately above the boundary line of plaintiff's ranch, and by means of a dam, flume and pipe-line have diverted substantially all of the waters of Hat Creek and run the same through the power-house for the generation of electricity; that during the course of construction of the dam, flume and other works, and since the same were constructed, defendants have caused large quantities of debris, dirt and other substances to pollute the waters of Hat Creek; that they have stored the water and turned the same loose with great violence, washing trees and debris down on plaintiff's lands and have shut off the water of said creek and thereby destroyed natural barriers between fields permitting stock to pass back and forth without let or hindrance. The fourth cause of action incorporates by reference certain paragraphs of the third count and recites the ownership in plaintiff and his predecessors in interest of the Tucker-Fitzpatrick and John Smith ditches and the acquisition and right of plaintiff to divert 2,600 inches of

water through the same; that defendants have caused earth, rock and debris to fill up the ditches and the intakes and interrupt the flow of water therein, and have caused dirt and filth to enter the ditches, thereby polluting the waters. Defendants are further charged with having cut the banks of the ditches and diverted the waters, and with having installed a pipe-line under one of the ditches making it impossible for plaintiff to go upon and over the same for the purpose of cleaning and repairing it. It is also charged that defendants have constructed a flume around the mountainside above plaintiff's ditch; that said mountainside is very steep and when water is turned into the flume the seepage therefrom will cause slides and cover up and destroy plaintiff's ditch and cut off his water supply. The removal of earth and rock from the hillside on which defendant's power plant is constructed and the dumping of the same on plaintiff's land and in Hat Creek is also complained of. Further allegations are to the effect that since the commencement of the action and during the years 1921 and 1922, defendants have diverted the water of Hat Creek and diminished the flow thereof in consequence of which plaintiff's crops have been destroyed. And finally it is charged that defendants have caused the waters to become so polluted that they are unfit for watering stock in consequence of which plaintiff has been compelled to discontinue his dairy and go out of business. Plaintiff prays that his title to the lands and his right to 2,600 inches be quieted and that an injunction issue restraining defendants from interfering with his vested rights and that he be awarded $140,000 damages. To this complaint each of the defendants, the Pacific Gas and Electric Company and the power and lumber companies, filed and presented separate demurrers. The Gas Company was dismissed from the action. The demurrers of the other defendants were directed mainly to the misjoinder of parties and causes of action. The demurrers were overruled.

Defendants thereupon filed separate answers. They deny and allege as follows: As to the first cause of action they deny complete ownership in plaintiff of the Tucker-Fitzpatrick ditch, its capacity, or that plaintiff has irrigated the amount of land he claims; allege its capacity and the right of defendants to a portion of the waters in both ditches to

irrigate their lands. Deny that plaintiff has diverted 1600 inches of water through the John Smith ditch or that he requires such amount; deny that such ditch is appurtenant to the Tucker lands, or that it has the capacity alleged by plaintiff. Deny that the Braden place is riparian to Hat Creek and allege the Lumber Company to be the owner of the bed and banks of said creek as the same flows through certain lands. Deny that all the lands described in the second and third causes of action are riparian to said creek and set forth the portions that are riparian. As to the third cause of action they allege that not more than 230 acres of plaintiff's ranch have been irrigated and deny that plaintiff has diverted 2,600 inches of water; allege diversion of water by defendants, and set forth the construction of the plant by the Power Company and its lease to the Lumber Company. Deny the acts of damage complained of. As to the fourth cause of action they deny the resulting damage or that any will occur in the future. Deny that the flow of water is impeded or polluted, and allege that a reasonable riparian use of the same is being made by defendants. By way of separate defense they allege ownership in the Lumber Company of certain riparian lands and ownership of all the waters in Hat Creek, except the amount to which plaintiff is entitled; allege the diversion of the water on to the riparian land and that it is conducted through a flume to the power-house and returned to Hat Creek on the riparian lands; allege that the electricity generated is distributed to the use of the public. Allege that 13.4 cubic feet have been permitted to flow in the Tucker ditch and 14.4 in the John Smith ditch. Allege the diversion of excessive amounts of water by plaintiff and that such excessive amounts have deprived defendants of the use thereof and caused them irreparable injury. As a second defense they set forth ownership of the bed and banks of Hat Creek from the northern boundary of plaintiff's land to the confluence of Hat Creek with Pit River, and the ownership of certain parts of the bed and banks of Pit River, and they set forth the details of the construction of Pit No. 3 power development; allege that all the waters naturally flowing in Pit River and its tributaries, including Hat Creek, are reasonably needed for the beneficial purpose of the generation of electricity on said riparian lands involved in Pit

No. 3. By a third separate defense the Power Company sets up the plea of the statute of limitations. The prayer asks that the Lumber Company be decreed to be the owner of the riparian lands in sections 20 and 29, and as such owner that it has the right to use all the waters of Hat Creek for the generation of electricity, subject to the right of plaintiff to take a reasonable amount, not to exceed ninety-three inches, during the irrigation season, and two miner's inches during the nonirrigation season, and for an injunction against plaintiff.

At the close of the trial the court made certain findings which with the conclusions of law cover many pages of the record. Plaintiff was awarded certain rights in the waters involved and damages in the sum of $40,000. Defendants were awarded an interest in certain of the lands and certain riparian rights. Both plaintiff and defendants have appealed from certain portions of the judgment. In order to avoid repetition the various assignments of error will be stated where dealt with. ■ The first claim made by defendants is that the trial court committed error in overruling their demurrers to the amended and supplemental complaint, as amended, for the reason that misjoinder of causes of action and of parties defendant appear on the face of that pleading. We have been cited to numerous cases by counsel for both parties upon this subject. We do not consider an extensive review of those authorities to be necessary. One of the objects of the reformed or code procedure is to simplify the pleadings and conduct of actions, and to permit the settlement of all matters of controversy between parties in one action, so far as may be practicable. The principal objection of defendants to the pleading is that some of the causes of action united in the fourth count are against the Power Company alone, while others are against both defendants jointly. It has been held in this state that notwithstanding the language of section 427 of the Code of Civil Procedure, if one of the causes of action affects all of the parties, it is no objection that other causes of action affect only some of them where all the parties are concerned in the main purpose of the litigation. In such case it is not material that they are all affected alike or in the same manner or degree, for the reason the relief awarded, if any, may be properly adjusted between them. (*Hepler*

v. *Wright*, 35 Cal. App. 567 [170 Pac. 667].) Of course, causes of complaint differing in their nature, and having no connection with each other, cannot be united. The object of this exception is to prevent the confusion and embarrassment which would necessarily result from the union of diverse and incongruous matters, but the exception has no application to a case embracing a variety of circumstances, so connected as to form one transaction even though the parties are not equally affected. If equality or uniformity were required a large part of the reformed or code procedure relating to this subject would be swept away. To permit a joinder where possible makes manifestly for the expeditious disposition of litigation without working hardship to any party defendant, and for this reason statutes relating to joinder should be liberally construed, unless expressly forbidden, to the end that a multiplicity of suits may be prevented. ■ It is well settled that judgment may be given against such of several defendants jointly charged as are shown to be liable and in favor of the others who are not. ■ It is equally well settled that when a case has been tried and judgment rendered upon the merits, in order to warrant a reversal for misjoinder, it must appear that some substantial rights of the demurrant have been affected, some prejudicial error suffered by him, or he has no room for complaint. (*Alexander* v. *Central etc. Co.*, 104 Cal. 537 [38 Pac. 410]; *Foerst* v. *Kelso*, 131 Cal. 376, 378 [63 Pac. 681]; *Allen* v. *Globe Grain & Milling Co.*, 156 Cal. 286 [104 Pac. 305]; 24 Cal. Jur., p. 880.) Section 4½ of article VI of the constitution has been applied to such a situation. (*Trask* v. *Garza*, 51 Cal. App. 739–743 [197 Pac. 807]. See, also, *Hirshfeld* v. *Weill*, 121 Cal. 13 [53 Pac. 402].) Then again defendants have not appealed from the entire judgment. They received substantial benefits thereunder which have become final. A waiver of the objection of misjoinder ought to be applied against them. Defendant companies are closely interrelated in the transaction upon which the action is based. They were represented by the same attorneys below and are so represented here. Nothing appears from the record which indicates that either defendant has been injured or prejudiced by reason of any misjoinder, even assuming such to exist. Under such circumstances they should not here be heard to complain

(*Harker* v. *Southern California Edison Co.*, 83 Cal. App. 204 [256 Pac. 848]). ▮ The same may be said of the further objection that failure to segregate damages between the defendants constituted error. In this connection it appears from the record that it was agreed between the parties that the question of damages should not be determined by the trial court, but should be left to the jury. When the form of verdict was considered by the court in the presence of counsel for all parties, some question arose with reference to it, but it was finally agreed that the one adopted ¯by the court should be given to the jury. Had defendants desired a different form they should have asked for it. Assuming that they did not expressly agree to the form adopted they could not stand idly by and after the rendition of the verdict, then for the first time on appeal claim that as they were not joint tort-feasors as to certain of the acts complained of, the damages should, therefore, have been segregated. At the time of the announcement of the form of verdict, defendants might have asked that it be made certain. Not having done so, they are concluded by their omission. (*Hicks* v. *Coleman,* 25 Cal. 122 [85 Am. Dec. 103] ; *Harker* v. *Southern California Edison Co., supra; First Nat. Bank of Los Angeles* v. *Maxwell,* 123 Cal. 360 [69 Am. St. Rep. 64, 55 Pac. 980].) Defendants next complain that the amount of water awarded to plaintiff for the various purposes claimed is excessive and not supported by the evidence. In this connection it is contended that the allowance of two and one-half miner's inches per acre to plaintiff for the irrigation season, and one and one-fourth miner's inches per acre during the nonirrigation season for the preservation of the ditch and other purposes is excessive and wasteful as a matter of law and further that the findings in this particular are not supported by the evidence. It is further claimed that the finding as to the beneficial use made by plaintiff of the waters and the acreage for which he is entitled to take water for irrigation purposes is materially less than that found by the court, and the amount allowed to plaintiff for the generation of power in the operation of his dairy and other purposes is excessive and the method employed wasteful. ▮ In this state there is no statute which definitely regulates the duty or amount of water reasonably necessary for irrigation. This being

so, the question becomes one of fact for the court, in a given case, to determine upon the evidence presented to it. The question of what *quantum* of water is reasonably required for irrigation is necessarily a complicated one, depending as it does upon many different conditions. The character of the soil, the area sought to be irrigated, the climatic conditions, the location, quality and altitude of the lands, the kinds of crops to be raised and the length of the irrigation season must all be taken into consideration and weighed as well with such other conditions as may be peculiar to each particular case (*Pabst* v. *Finmand,* 190 Cal. 124 [211 Pac. 11]). Under such circumstances it is apparent there can be no exact uniform rule for computing the duty or reasonable quantity of water for irrigation to be applied in all cases alike. (*Witherill* v. *Brehm,* 74 Cal. App. 286 [240 Pac. 529]; *California Pastoral Co.* v. *Madera Irr. Co.,* 167 Cal. 78 [138 Pac. 718].) ▆ It is, of course, the policy of the state to require the highest and greatest public duty from the waters of the state in the interest of agriculture and other useful and beneficial purposes. Our Civil Code expressly so provides (Civ. Code, sec. 1411). There can be no question, therefore, that an acquired right in waters is limited to the amount that is reasonably necessary for the beneficial purpose for which it is diverted, and no title can be acquired to that part of a diversion which is excessive of such needs. In so far as the diversion exceeds such reasonably necessary amount it is contrary to the policy of the law and is a taking without right and confers no title no matter for how long continued. (*Big Rock Water Co.* v. *Valyermo Ranch Co.,* 78 Cal. App. 266 [248 Pac. 264].) Defendants assert that an examination of all the California cases will reveal the fact that no decree has ever been upheld awarding more than one miner's inch per acre. This may be true and yet such circumstance is not controlling, for this court cannot fix a limit beyond which a trial court may or may not go, or say, as a matter of law, that the amount allowed is excessive irrespective of the evidence. As above stated, the amount of water necessary for beneficial use is a question of fact in each particular case. (1 Weil on Water Rights, 523.) The question is not to be determined by rule but rather by the evidence presented to the court or jury. ▆ In passing, it may be

said that in the ascertainment of this fact, long-continued use of a given quantity of water by appropriation may raise a presumption of necessary and beneficial use, for it is not reasonable to suppose that one would destroy or impair the value of his land by the use of an excessive amount. (*California Pastoral Co.* v. *Madera Irr. Co., supra; Campbell* v. *Ingram,* 37 Cal. App. 728 [174 Pac. 366]; *Stinson Canal Co.* v. *Lemoore Canal & Irr. Co.,* 45 Cal. App. 242 [188 Pac. 77].) Nor is there merit in the claim that the method employed by plaintiff in diverting the water is unauthorized. ■ While an appropriator can claim only the amount which is necessary to properly supply his needs, and can permit no water to go to waste, he is not bound, as here claimed, to adopt the best method for utilizing the water or take extraordinary precautions to prevent waste. He is entitled to make a reasonable use of the water according to the custom of the locality and as long as he does so, other persons cannot complain of his acts. The amount of water required to irrigate his lands should, therefore, be determined by reference to the system used, although it may result in some waste which might be avoided by the adoption of another or more elaborate and extensive distribution system. (Farnham on Waters, sec. 675; Wiel on Water Rights, 3d ed., sec. 481; *Barrows* v. *Fox,* 98 Cal. 63 [32 Pac. 811].)

The lands of plaintiff, as above pointed out, constitute a contiguous area along the knolls and sloping hillsides adjacent to Hat Creek. The ground is hilly and porous, marked by numerous depressions, and is irrigated by turning the water upon the ground and permitting it to run over the slopes. This is the character of system commonly used in the vicinity. There is no authority which requires an appropriator of water to change his system of irrigation so that others may perhaps be benefited thereby, assuming that the method may produce some waste. (*Barrows* v. *Fox, supra.*)

■ The findings of the trial court as to the allowance of water and the beneficial use that plaintiff has made thereof for various purposes, and the area of land irrigated by him, except as hereinafter stated, find full support in the evidence. Many witnesses, both scientific and lay, testified concerning plaintiff's claims in this respect and their testimony fully supports the findings of the trial court upon

these subjects. We do not feel that it is incumbent upon us to go into a detailed analysis of the voluminous evidence in this connection, which consists of many hundred pages. Defendants call our attention to the fact that many of plaintiff's witnesses are farmers and that their testimony is at variance with that of defendants' experts. Plaintiff, too, produced experts in support of his claims, but the trial court was not bound to accept the testimony of any of these witnesses to the exclusion of the farmers who were familiar with the character of the land and its needs. Their testimony was also entitled to be considered. It has been said that this character of testimony is of a higher quality than the mere opinion of an expert; that it is the difference between practice and theory, between experience and observation or examination. (*Stinson* v. *Lemoore, etc., supra.*) Moreover, questions of the weight of evidence and credibility of witnesses are for the trial court and its conclusion will not be disturbed where it has the support of substantial evidence. Equally without merit is the further objection that the allowance of the number of inches in the John Smith ditch exceeds the amount claimed by one of plaintiff's predecessors in her notice of appropriation. There is evidence to show the amount of water actually used for irrigation on plaintiff's lands for more than the prescriptive period, before the commencement of the action. An enlargement of a water right may be made in the same manner as a new appropriation. Defendants next complain that the claim for damages for the pollution of the water is not supported by the evidence. What we have said with reference to the sufficiency of the evidence to support the findings concerning the quantity and beneficial use of the waters to which plaintiff was entitled applies with equal force to this contention. Various witnesses testified as to the pollution and the resulting damage. It was shown that by reason of defendants' activities the water became alive with bugs and had green algae growing therein, causing stagnation, in consequence of which it became unfit for domestic or dairy purposes, which caused plaintiff's premises to decrease $75,000 in value, and no attempt was made by defendants to contradict the amount of depreciation. Defendants' next contention is that even assuming the quality of plaintiff's domestic and dairy water supply to have been depreciated by reason of

their acts, nevertheless as they are making a proper riparian use of the waters of Hat Creek, and their rights are being exercised in a lawful and reasonable manner, any loss resulting to plaintiff is under such circumstances without redress. In other words, they contend that the generation of electricity is a lawful riparian use; that as their riparian power is being created in a reasonable manner, any slight impairment of the quality of the water supply resulting therefrom must be borne by the lower riparian owners without complaint or redress it being *damnum absque injuria.* This doctrine may properly be applied where the injury works slight inconveniences, or occasional annoyances. It has no application where the injury is appreciable. The evidence relied upon by plaintiff shows that the damage suffered by him was not slight, but, on the contrary, was real and extensive, greatly exceeding the amount of damages recovered by him.

The law is well settled that any use of a stream which materially fouls and adulterates the water, or the deposit or discharge therein of any filthy or noxious substances that so far affect the water as to impair its value for the ordinary purposes of life, or anything that renders the water less wholesome than when in its ordinary state will constitute a nuisance, which courts of equity will enjoin, and for which a lower riparian owner, injured thereby, is entitled to redress. (*Trevett* v. *Prison Assn.*, 98 Va. 332 [81 Am. St. Rep. 727, 50 L. R. A. 564, 36 S. E. 373]; *Peterson* v. *City of Santa Rosa*, 119 Cal. 387 [51 Pac. 557].)

Conceding, therefore, defendants' generation of power to be a riparian use, that fact does not entitle them to pollute the water to the injury of others entitled to it. (Farnham on Waters, sec. 495, p. 1645; *Menton Irr. Co.* v. *Redlands L. & P. Co.*, 155 Cal. 323 [17 Ann. Cas. 1222, 22 L. R. A. (N. S.) 382, 100 Pac. 1082]; 40 Cyc., pp. 593, 594; *Fisher* v. *Feige*, 137 Cal. 39 [92 Am. St. Rep. 77, 59 L. R. A. 333, 69 Pac. 618]; *Peterson* v. *City of Santa Rosa*, 119 Cal. 387 [51 Pac. 557].) It is a matter of common knowledge that pure and wholesome water for domestic uses, and in farming operations, is a valuable asset, and its presence or absence materially affects the value of farm property, and such rights cannot be destroyed by a riparian owner in a stream to such an extent as to render the water unfit

for use. (*Yolande Coal Co.* v. *Pierce*, 12 Ala. App. 431 [68 South. 563].) ■ Then again, plaintiff's rights as an appropriator to the waters in the ditches were acquired when the lands at the point of diversion were part of the public domain. Under these circumstances plaintiff's right to a continued flow of the water in the ditches in its original purity is prior and superior to the rights of defendants as riparian owners. One of the essential elements of a valid appropriation is that of priority over others. ■ Under this doctrine he who is first in time is first in right, and so long as he continues to apply the water to a beneficial use, subsequent appropriators may not deprive him of the rights his appropriation gives him, by diminishing the quantity or deteriorating the quality of the water. ■ So far as the rights of the prior appropriator are concerned any use which defiles or corrupts the water so as to essentially impair its priority and usefulness for the purpose for which the water was appropriated by the prior appropriator is an invasion of his private rights for which he is entitled to a remedy both at law and in equity. (2 Kinney on Irrigation, 2d ed., pp. 2069, 2070; 1 Wiel on Water Rights, sec. 524; *Arizona Copper Co.* v. *Gillespie*, 230 U. S. 46 [57 L. Ed. 1384, 33 Sup. Ct. Rep. 1004, see, also, Rose's U. S. Notes] ; *Butte Canal & Ditch Co.* v. *Vaughn*, 11 Cal. 143 [70 Am. Dec. 769] ; *Phoenix Water Co.* v. *Fletcher*, 23 Cal. 482; *Hill* v. *Smith*, 27 Cal. 476; *Antioch* v. *Williams Irr. Dist.*, 188 Cal. 451 [205 Pac. 688].)

■ Defendants complain of the admission of the testimony of one Dr. White, a physician and health officer of Shasta County, as to the fitness for domestic use of plaintiff's water supply, it being claimed that he was not a bacteriologist and had made no analysis of the water, for which reasons he was not qualified to testify upon the subject. There is no merit in this objection. As county health officer he was certainly qualified to testify as to his opinion concerning the condition of the water and its fitness for domestic use. It does not require a bacteriologist to determine this question or that water is muddy, full of algae and bugs, and that its taste is unpalatable due to such causes.

■ Nor is there any merit in the claim that the court erred in admitting the testimony of certain witnesses for plaintiff to the effect that all the waters in the ditches were used

and that they were necessary for the irrigation of plaintiff's lands. The testimony was confined to the knowledge of the witnesses that all the waters used were necessary to produce maximum crops. They made no attempt to testify concerning the amount of water used by actual measurement. Their testimony was based upon their experience or judgment as to the amount of water necessary to properly irrigate the land and had nothing to do with nor did it relate to the amount of water used by actual measurement, that fact being established by other evidence. The testimony was admissible for the purpose for which it was received. (*Pabst* v. *Finmand,* 190 Cal. 124 [211 Pac. 11].)

Complaint is made of certain instructions given to the jury. Defendants are in no position to avail themselves of alleged errors in this respect. The instructions requested by plaintiff and defendants do not appear in the transcript herein, which contains only the instructions as given by the court. Upon an appeal prepared under the alternative method, instructions offered at the trial and refused by the judge, in order to be available to an appellant for use upon appeal, should be included in the reporter's transcript and settled by the judge. Since the transcript contains no copies of requested instructions by the parties and does not reveal which of the instructions were given by the court on its own initiative, defendants cannot here complain of error in the instructions. (*Martin* v. *Pacific Gas & Electric Co.,* 195 Cal. 544 [234 Pac. 321] ; *Shannon* v. *Calmus,* 70 Cal. App. 652 [234 Pac. 107].) For all that appears they may have been presented by defendants themselves. However, we have examined all the instructions and find no error contained therein.

The ruling of the court in the admission and exclusion of certain evidence is next complained of. In this connection it is first contended that the trial court erred in admitting testimony as to plaintiff's damages to his crops for the years 1923 and 1924, for the reason that such damages were not within the issues, they having occurred subsequent to the filing of the complaint. The evidence was properly admitted. It was offered and received in support of plaintiff's claim that damage to his crops for the period involved was in consequence of the unlawful acts of defendants committed prior to the filing of the amended and sup-

plemental complaint. Under such circumstances plaintiff was entitled to recover for the damage resulting after the commencement of the action (Civ. Code, sec. 3283; *Hicks* v. *Drew,* 117 Cal. 305 [49 Pac. 189]; *Bryson* v. *McCone,* 121 Cal. 153 [53 Pac. 637]; *Berry* v. *Bakersfield,* 177 Cal. 206 [170 Pac. 415]). ▉ Nor did the court err, as claimed, in excluding evidence to the effect that the pollution in the Tucker-Fitzpatrick ditch could be eliminated by the installation of a filter at a reasonable expense. ▉ It is no doubt the rule that where one suffers injury by the carelessness of another, the one so suffering must go to some trouble to avoid or lessen the damage, if a temporary expedient or slight expense will do so. This rule, however, does not compel a person who, as here, is suffering from a continuing nuisance, to take active measures which involve considerable expense, and which may or may not be practical, to prevent further injury in order to possibly minimize the damage for which the wrongdoer may be liable. (20 R. C. L., p. 494; *Suffolk Gold M. & M. Co.* v. *San Miguel,* 9 Colo. App. 407 [48 Pac. 828]; *Pelham Phosphate Co.* v. *Daniels,* 21 Ga. App. 547 [94 S. E. 847]; *Worthen, etc.,* v. *White Spring Paper Co.,* 74 N. J. Eq. 647 [70 Atl. 468]; *Johnston* v. *City of Galva,* 316 Ill. 598 [38 A. L. R. 1384, 147 N. E. 453].) It appeared from the proffered testimony that the installation of the filter could not be accomplished by a reasonable outlay. Nor was there any attempted showing that it would be practicable, considering the quantity of water claimed by plaintiff. The conditions here existing, including the cost of the filter, render the rule invoked by defendants inapplicable. (*Chambers* v. *Belmore Land etc. Co.,* 33 Cal. App. 78 [164 Pac. 404].)

▉ Defendants next complain of the admission of evidence as to the cost of a concrete flume at the head of the John Smith ditch, claimed by plaintiff to be necessary by reason of defendants' acts in obstructing the intake of the ditch. The diversion weir in Hat Creek is upstream from the ditch, and prior to the diversion by the Power Company of the water through its plant, such company constructed a wooden flume from the face of the dam into the ditch and the water therefrom was carried through this flume after the construction of Hat No. 2 power plant. It appeared in evidence that this flume was leaking and would soon decay

and it was necessary to replace this wooden flume in order to have the diversion works of the ditch in as good a condition as they were prior to the operations of the power plant. Plaintiff produced an engineer who testified that a permanent flume was necessary, and estimated the cost thereof, of a size sufficient to carry forty-six second-feet of water, the amount claimed to have been formerly diverted. Defendants' objection to this testimony is that the cost of a structure sufficient to carry the amount of water beneficially used by plaintiff as found by the court constitutes plaintiff's measure of damages, and not the cost of replacement of a ditch of the capacity of the one that existed before its destruction. The testimony was admissible at the time it was offered, for there was evidence to show that plaintiff had enjoyed waters to the full capacity of the former ditch. Defendants having destroyed plaintiff's ditch, he was entitled to have it replaced by one of the capacity destroyed. Nor does the fact that the court ultimately found plaintiff to be entitled to a less flow than he claimed alter or change the situation. It does not lie with defendants to say what use plaintiff might or might not make of a ditch of the capacity of the one destroyed, nor are we in any position to declare that he had a limited use for the same only. The measure of damages in cases of this character is the cost of restoration of the property destroyed. (8 Cal. Jur. 817.) Nor is there any merit in the further claim that evidence of cost of restoration should have been confined and limited to that of the character of the one destroyed. The reconstruction of an earthen ditch was made impossible by defendants' acts and plaintiff was entitled to one that would meet the changed conditions. (*Knoche* v. *Pratt,* 194 Mo. App. 300 [187 S. W. 578].) Moreover, defendants produced no evidence upon the cost of replacement of a ditch of any dimensions.

Defendants further complain of the admission of evidence regarding cost of raising the sides of the concrete section of the Smith ditch as constructed by defendants, and the necessity for, and the cost of constructing a concrete section in the Tucker ditch, which would carry the amount of water claimed by plaintiff. What we have said with reference to the Smith ditch disposes of this objection. There was evidence to show that the maintenance of this ditch in its origi-

nal condition could no longer be maintained by reason of defendants' acts, and that a permanent structure was required to meet the changed conditions in order that plaintiff might be placed in his former condition.

We will now consider the portions of the judgment from which plaintiff has taken an appeal. He first contends that the trial court erred in construing a certain deed which construction, it is claimed, deprived him of certain rights to which he is entitled. A brief statement of facts is necessary for an understanding of the question involved in this objection. On October 21, 1907, Lincoln Braden was the owner of the east half of the southeast quarter, the southwest quarter of the southeast quarter and the southeast quarter of the southwest quarter of section 20, township 36 north, range 4 east, M. D. B. & M., situated in Shasta County. Hat Creek, in the state of nature flowed through a portion of this land in a northerly direction. Where Hat Creek enters the southern boundary of section 20, the entire stream is in the southeast quarter of the southwest quarter of said section, and it continues in its natural course through the said southeast quarter of this southwest quarter until near the northern boundary of said legal subdivision when the creek makes an abrupt bend and a portion of the channel thereof is situated in the southwest quarter of the southeast quarter of said section. On the date last mentioned Braden and his wife conveyed to one Jesse E. Frick ''all that portion of the southeast quarter of section 20 . . . lying and being west of a line running along the east bank of Hat Creek and following the water's edge.'' The deed further recites that the parties of the first part intend to and do convey all land lying west of the east bank of Hat Creek in said legal subdivision of said land hereinabove referred to; the easterly boundary of the land hereby conveyed is intended to be a meandering line following the east bank of Hat Creek and following the water's edge at ordinary stages of the water; and the parties of the first part hereby intend to convey and transfer all the riparian rights which they have or possess by reason of ownership in said legal subdivision of land hereinabove particularly described. The Power Company subsequently acquired this land as conveyed to Frick, and at the time of the trial of this case, defendant Lumber Company was the owner thereof. On

July 7, 1920, plaintiff herein purchased from Ella P. Braden, the successor in interest of Lincoln Braden, the east half of the southeast quarter, the southwest quarter of the southeast quarter and all that portion of the southeast quarter of the southwest quarter of section 20, lying east of Hat Creek, together with all water rights appurtenant thereto. It was plaintiff's contention at the trial that the deed from Braden to Frick conveyed only all that portion of the southeast quarter of the southwest quarter of section 20, lying west of a line running along the east bank of Hat Creek and following the water's edge, together with all the riparian rights pertaining to this subdivision, and that Braden retained the riparian right which was a part of and attached to the southwest quarter of the southeast quarter of section 20, by virtue of the fact that Hat Creek naturally flowed through, over and across said last subdivision, and plaintiff subsequently acquired this land under his deed from Ella P. Braden. It was defendants' contention, and the trial court found, in construing the deed from Braden and his wife to Frick, that the grantors intended to and did convey a greater estate than that described in the deed. Accordingly it interpreted the instrument in this particular to include all that portion of the southeast quarter of the southwest quarter, and the southwest quarter of the southeast quarter of section 20 to and including the meandering line following the east bank of Hat Creek, and following the water's edge of said stream at ordinary stages of the water, together with all riparian rights in Hat Creek appertaining to said southeast quarter of the southwest quarter and the southwest quarter of the southeast quarter of said section. In reaching this conclusion the court proceeded upon the assumption that the description in the deed was ambiguous and uncertain, and it permitted the attorney who drew the same to testify, over objection, what was intended to pass thereunder. His testimony was to the effect that it was Braden's intention to convey to Frick all the riparian rights in and to the waters of Hat Creek which he possessed in and to the southwest quarter of the southeast quarter of section 20. In so doing the court committed error. There is no uncertainty whatever in the description of the property conveyed under this deed. In plain and unambiguous language the land is described as all that portion of the southeast quar-

ter of the southwest quarter of section 20, lying and being west of a line running along the east bank of Hat Creek and following the water's edge *in said legal subdivision.* No reference whatsoever is made to any land embraced within the southwest quarter of the southeast quarter of section 20, or to the riparian rights in and to Hat Creek which are a part and parcel of said legal subdivision. Nor is there anything contained in the subsequent language employed which enlarges the grant or which in any manner renders the description uncertain, for it is there recited that the lands and riparian rights conveyed relate to the subdivision "herein above particularly described." Under no possible construction of the language employed in the instrument itself could it be held to embrace all of the southwest quarter of the southeast quarter of section 20. Even if it be assumed that the deed was sufficient to convey the land in the southwest quarter of the southeast quarter lying west of a meandering line along the east bank of Hat Creek and following the water's edge, it would not thereby convey the riparian rights to the remainder of the lands in the southwest quarter of the southeast quarter of section 20 adjoining the creek. No principle of law is more well established than that nothing passes by deed except what is described in the grant. ▌ Where through fraud or mistake, or in the event that the terms of an instrument are sufficiently uncertain to leave the intention of the parties in doubt, parol evidence bearing upon the question is admissible. Here no fraud or mistake is charged nor, as above stated, is there any ambiguity or uncertainty involved. An attorney under such circumstances who prepared the instrument cannot testify as to what was intended by the parties. (10 Cal. Jur., sec. 199, p. 930.) Whatever his concept of a written agreement may be, it is inadmissible to overthrow plain and unambiguous language. (*Fleming* v. *Law,* 163 Cal. 227 [124 Pac. 1018].) A meaning cannot be given to an instrument under the guise of construction or explanation which is not to be found in the instrument itself. (*Payne* v. *Commercial Nat. Bank,* 177 Cal. 68 [L. R. A. 1918C, 328, 169 Pac. 1007].) Nor can extrinsic evidence, in the absence of fraud or mistake, be received of the intention of the parties. (*Nicholson* v. *Tarpey,* 89 Cal. 617 [26 Pac. 1101].) Their rights must be ascertained from its terms (Code Civ.

Proc., sec. 1856). The record shows that plaintiff and his predecessors in interest have been in the exclusive possession of all the land embraced within the southwest quarter of the southeast quarter of section 20, and have paid all the taxes levied and assessed against said land subsequent to the execution of the deed under which defendants claim. No testimony was introduced to show that either Braden or Joerger recognized the right of Frick or his successors in interest to exercise ownership or possession over the southwest quarter of the southeast quarter of section 20 over which Hat Creek flows. From what we have said upon this subject it follows that the finding of the trial court that the Lumber Company is the owner of all riparian rights in and to the waters of Hat Creek in the southwest quarter of the southeast quarter of section 20, is not supported by the evidence. Under this finding plaintiff is deprived of the right to use any of the waters of Hat Creek where it flowed over and across the southwest quarter of the southeast quarter of section 20, a right that plaintiff or his predecessors have never parted with.

 It is next contended that the trial court erred in deciding that the plaintiff is not entitled to divert water through the John Smith ditch to irrigate that portion of the Tucker place lying east of Hat Creek. In this connection it is urged that the evidence shows that Smith and Braden diverted a certain flow of water through the John Smith ditch for the purpose of supplying the Tucker land; that a prescriptive right was thereby created as against the Lumber Company to divert a certain quantity of water for such purpose, and that when plaintiff succeeded to the rights of Smith, Braden and Grant, by virtue of his purchase from them of their lands and of all their interest in the said ditch, he had a right to continue to convey a sufficient quantity of water through the ditch for the irrigation of the Tucker lands east of Hat Creek. Defendants, on the other hand, contend that the evidence shows that the only water used on such lands was waste and seepage water to which plaintiff could acquire no right. Plaintiff concedes that when his predecessors in interest were irrigating their lands, a certain amount of seepage and waste water drained off the same on to the Tucker lands below, and that this water was used to at least partially irrigate a portion of such lands.

He claims, however, that when his predecessors in interest were not irrigating their lands a sufficient amount was diverted from the ditch on to the Tucker lands to properly irrigate the same under an arrangement with, the owner of such lands that he would suffer the seepage and waste water from the ditch to flow at all times over and upon his lands without complaint, a situation he had been attempt-. ing to prevent; that when plaintiff purchased the ditch this arrangement was continued for such a period that it ripened into a title by prescription against the lands of the Power Company across which the water was conveyed. There can be no question that an appropriator of water may acquire a prescriptive right to divert and use the same from a stream on land that he does not own, and this user may be either by the claimant or by one holding under him, as a lessee or tenant. Rental and sale of water is a beneficial use. (25 Cal. Jur., p. 1159, sec. 173.) The quantity claimed, however, must not only have been actually used, but must have been reasonably necessary and actually ap-. plied to a beneficial purpose. Without such beneficial use no prescriptive right can be acquired, regardless of the period of time such user may have been continued. (*Turner* v. *East Side Canal & Irr. Co.*, 169 Cal. 652 [147 Pac. 579]; 25 Cal. Jur., p. 1160, sec. 174.) Upon the question as to whether or not the Tucker lands were supplied in part directly from the ditch, or whether the same were wholly irrigated by the seepage or waste waters flowing therefrom, the record is voluminous and the evidence conflicting. There is testimony, however, to show that no water was used on the land east of Hat Creek except seepage and waste water prior to the time of plaintiff's purchase. There is also testimony which indicates that there was never any intent on the part of the owners to make any additional diversion of water to irrigate the lands in question or that they required irrigation, considering the seepage from the ditch. The permissive use of the seepage and waste waters, of course, created no right in the ditch to the owner of the Tucker lands and such lands acquired no right appurtenant to the ditch, as no permanent right can be acquired to have a waste water supply continued, either by appropriation or prescription. (*Hunceker* v. *Lutz*, 65 Cal. App. 649 [224 Pac. 1001]; Kinney on Waters, 2d ed., 661; Wiel on Water

Rights, sec. 57.) There being evidence in the record to sustain the finding of the trial court upon this subject, we have no power to disturb it.

 And finally plaintiff contends that the court erred in awarding the Power Company 360 miner's inches of water through the Tucker-Fitzpatrick ditch for the use of its lands, as there is no evidence in the record to show the quantity of water so actually used. Counsel for defendants concede that plaintiff is correct in this contention.

From what we have said it follows that the portion of the judgment in favor of plaintiff is affirmed, as is also the portion which denies to plaintiff any water for the use of the Tucker lands lying east of Hat Creek. The portion declaring defendant lumber company to be the owner of all riparian rights in any of the waters of Hat Creek in the southwest quarter of the southeast quarter of section 20, township 36 north, range 4 east, M. D. B. & M., is reversed, as is also the portion declaring the Power Company to be entitled to 360 miner's inches of water measured under a six-inch pressure through the Tucker-Fitzpatrick ditch.

Waste, C. J., Finch, J., *pro tem.*, Langdon, J., Richards, J., Curtis, J., and Shenk, J., concurred.

Mr. Justice Preston, being disqualified, does not participate in the foregoing opinion.

A petition for a rehearing was denied by the Supreme Court on May 9, 1929, and the following opinion then rendered thereon:

THE COURT.—Rehearing denied. Defendants and certain *amici curiae* in support of their petitions for a rehearing have asserted that the allowance of two and one-half miner's inches per acre duty of water for irrigation is incredible and palpably improbable. There is no merit in the claim. The lands in question, as pointed out in the opinion, are hilly and porous and present a very unusual and extreme condition from a water requirement standpoint. All of the witnesses who were engaged in farming the lands in question testified as to the amount of water required to properly mature the crops and their testimony fully

supports the finding upon this subject, as does also the irrigation engineering experts produced by plaintiff. The testimony of one of the experts shows that from three and one-half to four miner's inches per acre are reasonably necessary to obtain best results. In addition thereto, it appears in evidence that the division of water rights of this state approved a net duty of water of two inches to the acre to some 3,000 acres of land on upper Hat Creek as a net duty of water for irrigation of lands in that locality, and there is evidence to show that this allowance is insufficient to properly irrigate these lands. These lands are located in the immediate vicinity of the Joerger lands and they require a less amount of water than the Joerger lands, owing to the fact that the latter are hilly and more porous, in consequence of which frequent applications of water are required to maintain proper moisture for the crops. The amount of water here allowed is exactly the same as that allowed by the division of water rights to the lands in upper Hat Creek, the additional one-half inch being added by the court to cover the loss in transportation which the evidence shows occurs. Under all these circumstances we cannot say as a matter of law that the amount allowed in this particular case is excessive.